## HOOD v. THE STATE.

CRIMINAL LAW.—*Open Fornication.*—*Indictment.*—*Defining Crimes.*—An indictment for living in open and notorious fornication may be founded upon the 21st section of the act of June 14th, 1852, (2 R. S. 1876, p. 457,) "defining misdemeanors," etc., though such offence is not defined by such section.

SAME.—*Fornication Defined.*—Fornication is sexual intercourse between any man and an unmarried woman.

SAME.—*Adultery Defined.*—Adultery is sexual intercourse between a married woman and any man other than her husband.

SAME.—An indictment for living in open and notorious fornication is sustained by proof that the defendant, during the lifetime of his undivorced wife, had married, and openly lived and cohabited with, an unmarried woman.

SAME.—*Evidence.*—*Divorce.*—*Jurisdiction.*—On the trial of such cause, evidence that the defendant, prior to such second marriage, had obtained a decree of divorce from his first wife, rendered by a court having no jurisdiction of either of the parties to the action for such divorce, is inadmissible.

SAME.—*Divorce of Non-Residents.*—A decree of divorce granted by a court of another state, showing upon its face that neither of the parties to the action therefor were citizens or residents of that state, is invalid in this.

SAME.—*Statute of Foreign State.*—Such divorce of non-residents, so decreed, is not rendered valid by a statute of such state, authorizing a divorce to be decreed on behalf of a party desiring to become a resident thereof.

SAME.—*Residence of Petitioner.*—To give a court jurisdiction of an action for a divorce, the petitioner must be a resident of the state or territory within which such divorce is sought to be obtained.

SAME.—*Statute of Utah.*—The statute of Utah Territory, authorizing the courts of Utah to grant divorces to parties who are not, but merely desire to become, residents of such territory, is void.

SAME.—*Constitution of United States.*—Section 1, article 4, of the constitution of the United States, requiring that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," does not require credit to be given to a decree of divorce rendered by a court having no jurisdiction of the parties to such action.

SAME.—*Intent.*—A person is held to have intended to perform what he has performed, and to be chargeable with notice of its consequences.

From the Dearborn Circuit Court.

*C. S. Jelley, Gregg & Parks,* and *A. C. Downey & Sons,* for appellant.

Hood v. The State.

*H. D. McMullen, G. R. Brumblay,* Prosecuting Attorney, and *C. A. Buskirk,* Attorney General, for the State.

PERKINS, C. J.—Indictment against Nelson F. Hood for living in open and notorious fornication with one Jane Chaney. A motion to quash the indictment was overruled. Plea, not guilty. Trial by jury; conviction. New trial denied, and the defendant sentenced, over a motion in arrest of judgment, to pay a fine of one hundred dollars, be imprisoned in the county jail six months, and pay the costs of the prosecution, etc.

A bill of exceptions contains the evidence.

The State proved that the appellant, Hood, was married in Clark county, Indiana, to Maggie Horton, in July, 1869, and that said Maggie is still living. The State proved further, that, in June, 1876, the appellant, Hood, married Miss Jane Chaney, of the State of Kentucky, and that soon after the marriage the two took up their residence in Aurora, Dearborn county, Indiana, where they continued to reside, living together openly and notoriously as man and wife, till the finding of this indictment.

The appellant then gave in evidence parts of the statutes of Utah on the subject of divorce.

The first section of that statute confers jurisdiction upon the Probate Court to grant divorces. The second section provides, that " The petition for a bill of divorce must be made in writing, upon oath or affirmation, and must state clearly and specifically the causes on account of which the plaintiff seeks relief. If the court is satisfied that the person so applying is a resident of the territory, or wishes to become one, and that the application is made in sincerity, and of her own free-will and choice, and for the purpose set forth in the petition, the court may decree a divorce from the bonds of matrimony, against the husband, for any of the following causes, to wit." Here follows a specification of causes.

Section 3 is this: "The husband may, in all cases, obtain a divorce from his wife for like causes, and in the same manner, as the wife may obtain a divorce from her husband." The statute provides, further, for the service of process on persons found within the territory, and for publication of notice to those made defendants who can not be found within the territory.

The appellant then gave in evidence the record of a suit for divorce, prosecuted in Utah Territory. The commencement of the complaint in the suit is as follows:

"*Nelson F. Hood* v. *Maggie H. Hood,* in the Probate Court of Beaver county, Territory of Utah.

"The plaintiff complains, and alleges, that plaintiff and defendant are husband and wife; that they intermarried at Jeffersonville, State of Indiana, on the 3d day of July, 1869, and ever since have been, and now are, husband and wife; that plaintiff wishes to become a resident of Beaver county, Utah, but is so situated that he can not, at present, carry his desires into effect."

The complaint then proceeds to state grounds on which a divorce is prayed. It is signed:

"Nelson F. Hood.

"A. Goodrich, Plaintiff's Attorney."

The complaint was sworn to in Cook county, Illinois, before "A. Goodrich, Commissioner of Deeds for Utah Territory," on the 14th day of August, 1876, and filed in the clerk's office of Beaver county, in said territory, on the 24th day of the same month, accompanied by an affidavit of the non-residence of the defendant. This affidavit was sworn to on the 14th day of August, 1876, the day on which the complaint was verified, before "A. Goodrich, Commissioner of Deeds for Utah Territory," apparently the same person who administered the oath of the appellant to the complaint.

After entries of further interlocutory proceedings, the calling of the defendant, the entering of her default, the

hearing of proof of the allegations in the complaint, etc., the record continues thus :

"On the 4th day of October, A. D. 1876, the same being one of the days of the September term of the Probate Court of Beaver county, Utah Territory, and the said plaintiff appearing by his counsel, A. Goodrich and Daniel Tyler, and the said defendant not appearing by herself or counsel, and having been duly served with the process of this court as required by the statute, summons having been duly served upon her by publication of the same for forty days, in said territory, as required by the statute of Utah, and having been three times solemnly called to plead, answer or demur to plaintiff's said complaint, and coming not, but making default herein, the complaint of said plaintiff was thereupon taken *pro confesso*. And now again on this the 4th day of October, 1876, it being at the September term, A. D. 1876, of court, the said cause came on for hearing before the court.

"And the court having heard the testimony in said action, from which it appears that all the material allegations in plaintiff's petition are true, and sustained by the testimony, free from all legal exceptions, as to the competency, admissibility, and sufficiency, that the plaintiff and defendant were lawfully married at Jeffersonville, State of Indiana, on the 3d day of July, 1869, and that said parties can not live in peace and union together, and that their welfare requires a separation, and that the plaintiff wishes to become a resident of the county of Beaver, and Territory of Utah, that said matters and things so alleged and proved in behalf of the plaintiff are sufficient in law to entitle the plaintiff to the relief prayed for.

"Therefore, it is ordered, adjudged, and decreed, that the court, by virtue of the power and authority therein vested, and in pursuance of the statute in such case made and provided, does order, adjudge, and decree, that the marriage between the said plaintiff, Nelson F. Hood, and

the said defendant, Maggie H. Hood, be dissolved, and the same is hereby dissolved accordingly, and the said parties are, and each of them is, freed and absolutely released from the bonds of matrimony, and all the obligations thereof; and that all and every duty, rights, rights of dower and courtesy, claims, and claims for alimony, accruing to either of said parties by reason of said marriage, shall henceforth cease and determine, and that the said parties be severally at liberty to marry again in like manner as if they had never been married.

[Signed]                    " WILLIAM JAMES COX,
              "Probate Judge of Beaver County."

There was evidence tending to prove that appellant, Hood, was not within the Territory of Utah during the year the above decree of divorce was granted, and had not been for years previous.

The indictment in this case was predicated upon section 21 of the act touching misdemeanors, (2 R. S. 1876, p. 466,) which reads thus :

" Every person who shall live in open and notorious adultery or fornication shall be fined in any sum not exceeding one thousand dollars, and imprisoned not exceeding twelve months."

The point is made that an indictment will not lie upon this section of the misdemeanor act, because it does not define the offences, or either of them, named in it.   Such was formerly held to be the law in this State, but latterly the law has been held otherwise.

The statute, (our misdemeanor act,) upon a section of which the indictment in this case is based, was approved June 14th, 1852. Another statute had been enacted on the 31st of May, 1852, 1 G. & H. 415, which declared, that " Crimes and misdemeanors shall be defined, and the punishment therefor fixed, by statutes of this State, and not otherwise." In *Wall* v. *The State*, 23 Ind. 150, this court, in construing the act of June 10th, 1852, touching felonies, and the act of May 31st, 1852, *supra*, held, that these stat-

utes can. not be construed together, but fall within the rule that a later statute repeals a prior inconsistent one, and that whenever, after the 31st of May, 1852, the Legislature does create a crime by name, without defining it, such statute, being in conflict with the act of the 31st of May, *supra*, repeals that act, and the act creating a crime, without defining it, stands. This decision was followed in *The State* v. *Craig*, 23 Ind. 185, and in *The State* v. *Oskins*, 28 Ind. 364, and the earliest cases holding the contrary doctrine, viz.: *Hackney* v. *The State*, 8 Ind. 494; *Jennings* v. *The State*, 16 Ind. 335; *The State* v. *Huey*, 16 Ind. 338, and *Marvin* v. *The State*, 19 Ind. 181, are overruled in *Wall* v. *The State*, *supra*. We adhere to the later decisions, in the interest of legal stability.

The next question arising in the cause is this, is the divorce granted in Utah valid?

It is valid, if the court granting it had full jurisdiction. Had it? It appears by the record that the divorce was granted in a suit between two persons, neither of whom was, at the time of the proceeding, a resident of Utah, or within the boundaries of the territory, nor had previously been, but both of whom were residents and citizens of a state in the Union. Neither of the parties had placed himself or herself under the jurisdiction of Utah. Such being the case, it is well established that the court in Utah had, and could have, no jurisdiction to grant the divorce in question, and that the same is inoperative and utterly void. This is a question to be decided by the *jus gentium*, the law of nations, the first principles of which are, that all nations, in respect to rights, are equal, and that each is sovereign within its own territory, with jurisdiction over the persons and property therein. 1 Kent Com. 21. Hood, when the divorce in question was granted, was under a jurisdiction other than that of Utah. It is further settled, that the states of the Union, as between themselves, are sovereignties. In determining this question of jurisdiction, therefore, we have only to enquire

what jurisdiction the State of Indiana has over the people and property within the Territory of Utah; for, on this point, the states and territories are severally equal. What jurisdiction Illinois can exercise over residents and property in Indiana, Indiana can exercise over residents and property in Illinois.

To place this matter in another light, a state may authorize divorces to be granted by legislative act. Suppose, then, that the Legislature of Utah had granted this divorce, (neither of the parties being citizens or inhabitants of the territory,) severing a domestic relation between two citizens of, and residents in, Indiana, would any one claim that the divorce would be valid? If it would be, then it follows that the State of Indiana can confer upon her Legislature power to divorce, by statutory enactment, husbands and wives, citizens and residents of Utah, or of Illinois or Ohio. And, if so, what becomes of the doctrine of the sovereignty of states and nations within their own respective territories? And if the Legislature of Utah can not grant divorces to residents and citizens of foreign states, it can not confer such power upon the judiciary of the state. Certainly, as a general proposition, states and nations can not exercise such extra-territorial jurisdiction. But we need not enlarge upon these established elementary principles. The case before us is too plain to admit of argument. It is shortly this: Hood desired to obtain a divorce from his wife. Neither of the parties was under the jurisdiction of Utah. The petition of Hood and the decree of divorce expressly state this fact. If he was not a citizen and resident of Utah, he was of some other state or nation. Still the court of Utah grants a divorce to a man who informs it, in his application, that he is under a jurisdiction other than that of the Territory of Utah, and that he is not subject to hers. The divorce manifestly was granted in violation of the sovereignty and jurisdiction of another state, and in violation of the plainest principles of international and

constitutional law. The provision in the statute of Utah, authorizing her courts to grant divorces to citizens of foreign states and nations, who were not, but desired to become, residents of Utah, was *ultra vires,* and void. No plainer or more palpable case of the exercise of extra-territorial jurisdiction could exist. Hood was not only not a citizen or resident of the territory, but he did not personally enter the territory, so as to give it jurisdiction over him for temporary police purposes. We cite on the question of jurisdiction the following cases in our own State and the cases referred to in them: *Sturgis* v. *Fay,* 16 Ind. 429; *The Eaton, etc., R. R. Co.* v. *Hunt,* 20 Ind. 457; *Beard* v. *Beard,* 21 Ind. 321; Constitution of Indiana, article 14.

Nor is the decree of divorce, in this case, within the operation of that clause of the Constitution of the United States which declares, that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. Const. U. S., art. 4, sec. 1.

That clause does not include judgments and decrees which severally show upon their face, that the courts rendering them had no jurisdiction in the premises. *Waltz* v. *Borroway,* 25 Ind. 380; Cooley Const. Lim., 2d ed., p. 17.

To avoid misconstruction, we wish it to be borne in mind, that the record of the suit in the Territory of Utah, in question in this case, was not one upon an ordinary, simple contract between parties, who could make and rescind such contract at pleasure, but it was a suit to sever the bonds of matrimony between the parties in that suit; to dissolve a relation into which the parties could enter only in accordance with the law of the state, and which could not be dissolved by act of the parties, but only by permission of the state having, at the time, jurisdiction over both or one of them. As is well said by STUART, J., in *Noel* v. *Ewing,* 9 Ind. 37: "Marriage is more than a contract. It is not a mere matter of pecuniary consideration.

It is a great public institution, giving character to our whole civil polity." It is a status; a domestic relation resulting from a consummated contract to marry. *Ditson* v. *Ditson,* 4 R. I. 87; *The People* v. *Dawell,* 25 Mich. 247. It is to a proceeding to dissolve such a relation, that what is said in this case applies.

To give jurisdiction in a divorce suit, the plaintiff, the petitioning party, must be a resident of the state or territory where the divorce is obtained. This fact gives jurisdiction of such person, and renders the divorce (notice by publication or otherwise having been given to the defendant) valid as to the plaintiff. And, being valid as to one, public policy demands that it should be held valid as to both parties. *Tolen* v. *Tolen,* 2 Blackf. 407; *Jenness* v. *Jenness,* 24 Ind. 355; *Ewing* v. *Ewing,* 24 Ind. 468; *Ditson* v. *Ditson, supra.* Having arrived at the conclusion that the Utah divorce was void, and that appellant is still the husband of the woman whose maiden name was Maggie Horton, and that he is not the husband of Jane Chaney, we proceed to enquire whether he is shown to be guilty of the offence for which he was indicted. He was indicted for fornication. Our statute does not define fornication or adultery; but crimes, as we have seen, need not be defined by the statute, and, consequently, the court must judicially declare the definition. Fornication is sexual intercourse between a man, married or single, and an unmarried woman.

Adultery is sexual connection between a married woman and an unmarried man, or a married man other than her own husband.

These definitions are not in accordance with some authorities, but they are with others, and, we think, the better; and they appear to us to be in harmony with the reason of things. We will limit the discussion of this topic to the question of adultery; as when we show what that is, we necessarily show what fornication is, as unlawful sexual intercourse that is not adultery is fornication.

" By the civil law, adultery could only be committed by the unlawful sexual intercourse of a man with a married woman. Thus, as is stated in Wood's Institute, 272, adultery is a carnal knowledge of another man's wife, and the connection of a married man with a single woman does not make him guilty of the crime of adultery." DEWEY, J., in *Commonwealth* v. *Call,* 21 Pick. 509.

Bicknell, in his Criminal Practice, p. 446, thus states what he understands to be the law in Indiana on this point:

" Strictly, adultery consists in carnal connection with another man's wife : such an act is adultery and not fornication, 2 Blackf. 318 ; and the sexual intercourse of any man with a married woman, is adultery in both, and the intercourse of a married man with an unmarried woman, is fornication in both."

In *The State* v. *Wallace,* 9 N. H. 515, it is held, that " an unmarried man, who has unlawful intercourse with a married woman, from which spurious issue may arise, is guilty of adultery."

But the case in which the question has been more fully and learnedly examined than in any other which has fallen under our notice is *The State* v. *Lash,* 1 Harrison, 380, from which we make copious extracts :

" There never was an action for adultery known to be maintained at the common law by any but a husband; shewing that the offence can not possibly be committed with any other than a married woman. The heinousness of it consists in exposing an innocent husband to maintain another man's children, and having them succeed to his inheritance. This is the common law doctrine of adultery, transmitted to us from the earliest times, by those venerable sages, who gathered it from existing precedents, records and decisions, at the times they respectively wrote. I shall cite only a few of them, because the records and decisions referred to by them, have been so faithfully consulted, and the testimony of those sages ex-

amined and condensed with such admirable precision, in the imperishable commentaries of Blackstone, that it is almost vanity to look behind his work.

"More definite language can not be selected for confining adultery to illicit intercourse with a *married* woman, than his following definition of the offence. 'Adultery, or criminal conversation with a *man's wife.*' The woman must not be single; she must be another man's wife; and whoever, married or single, has illicit intercourse with her, becomes guilty of adultery. The text is in 3 Bl. Com. 139, and is so clear of ambiguity as to challenge any attempts to evade it.

"Let us next see how Buller in Book 1, ch. 6 of his introduction, coincides with the commentaries; he says: 'The action of adultery lies for the injury done to the *husband*, in alienating his *wife's* affections, destroying the comfort he had from her company, and *raising children for him to support and provide for.*' Bul. N. P. 26. He represents adultery to be an injury to a *husband*, exposing him to have children of another man, raised, for him to support, while he lives, and to provide for, at his death. This injury to a *husband* is made the very gist of adultery. No one will suppose him to mean that the alienation of the wife's affections, and loss of comfort in her company, constitute the offence; the alienation of her affections might accrue from the malignancy of his own temper, and the loss of comfort in her company, from lunacy; he does not mean that any malignancy of temper, or that lunacy or any other sickness amounts to adultery; they are only aggravations that may or may not attend the offence; therefore the essence of adultery at the common law without which the action can not be maintained, is that criminal intercourse with a *married* woman, which exposes her *husband* to support and provide for another man's issue. * * *

"Let us next take up Bacon's Abridgment, that famous

repository of the common law, wherein he draws the distinction between fornication and adultery so clearly as to admit of no equivocation. He says : '*Fornication* is unlawful, because children are begotten without any care for their education ; but *adultery goes further*, it entails a spurious race on a party for whom he is under no obligation to provide.' Bac. Ab. Marriage and Divorce, 569.

" This is the circumstance on which adultery depends at the common law; its tendency to adulterate the issue of an innocent *husband*, and to turn the inheritance away from his own blood, to that of a stranger. If the woman be *single*, her incontinence produces none of this evil ; her issue takes away no man's inheritance; it can be heir to nobody, and the burthen of its support, is cast by law upon herself and the partner of her guilt.   *   *   *   I will barely add that adultery at the common law, is limited to criminal intercourse with a *married* woman, both by Swift and Reeve who are among our most eminent American Commentators, and that I am acquainted with no treatise on the common law, English or American, to the contrary. Whether its regulation on this point, was borrowed at some early age, from the Levitical law, which the early dispersion of the Jews carried into various parts of Europe, I am not able to say ; but certain it is, that this wide distinction between criminal intercourse with a *married* woman, and a *single* woman, is emphatically settled in the Levitical law ; the former being punished with death, while the latter was only a fine.   See Levit. ch. 20, verse 10, and Deut. ch. 22, verse 22 to 28."

The opinion from which we have extracted was pronounced by Justice FORD.   Chief Justice HORNBLOWER added : "I have prepared an opinion, which it is unnecessary to read, according with that of Justice FORD.

" This question has never before been determined in this State, I believe : although the law has ever since the year 1704, provided a punishment for the offence."

Having in the progress of this investigation arrived at

the conclusion, as we have before stated, that the Utah divorce was a nullity, it follows that the appellant is still the husband of Maggie Horton Hood; that his pretended marriage with Jane Chaney was also a nullity, and that his living and cohabiting with her was the living and cohabiting of a married man with an unmarried woman, which, as we have seen, constitutes the offence of fornication, the offence for which appellant is indicted and prosecuted in the cause now before us.

We have looked through the proceedings on the trial, and they appear to us to have been conducted with fairness and legality. The instructions of the court stated the law with accuracy, to the jury.

It is claimed in the brief of appellant's counsel, that it was not proved that the wife of appellant, whose maiden name was Maggie Horton, was still living. The record discloses that the fact was proved. It shows that she was present in court, during the trial, and was pointed out to the jury by a witness who knew her as the wife of appellant.

It is claimed that the court erred in permitting evidence of a conversation at the clerk's office, in Kentucky, where Hood obtained his license to marry Miss Chaney. The evidence given touching the conversation is not in the record, and it may have been harmless.

It is urged that appellant did not intend to commit a crime. He intended to perform the acts he did perform. He is chargeable with notice of legal consequences.

We discover no error in the record.

The judgment is affirmed, with costs.