BETHUNE *v.* BETHUNE.

4-4316

Opinion delivered June 1, 1936.

*Atkinson & Stewart,* for appellant.

*B. E. Friday* and *Robert L. Rogers, II,* for appellee.

BUTLER, J. In August, 1930, the appellee, Johnnie Mae Bethune, nee Owen, resided with her father in the

town of Wynne, Arkansas. In that month she was married to the appellant, Roderick A. Bethune, in Marion, Arkansas.

The appellant admits his cohabitation with the appellee as man and wife, but testified that this occurred only on a very few occasions. The appellee, on the other hand, testified, and was corroborated in her statement, that appellant visited her in her home nearly every week-end for several months, and at other times they would spend the week-end in Memphis or some other city. Appellant is a civil engineer, and at this time had employment in Arkansas. In November following the marriage, appellant left the appellee, and it appears that he filed suit for divorce in Pulaski county soon thereafter. Before, this, however, during the period when he was visiting his wife from time to time, he secured a sum of money from her. He stated that it was about $200, and she says it was $250. Appellant had gotten into some kind of trouble as a result of an automobile collision and needed money. He informed his wife of this, and she told him she had $250 she would let him have with the understanding that he was to return it to her whenever she needed it. Appellant claims that it was a gift, but even from his own statement, there is nothing to justify his contention. He admits mentioning to appellee his need of money, that she volunteered to let him have some, and handed him the money one evening while they were in his car. In this connection, appellant stated: "Nothing was said about whether it was a loan or a gift."

Appellant abandoned his suit for divorce in Arkansas, and moved to Bastrop, Louisiana, early in 1931. He obtained employment with the Louisiana Highway Commission, and was transferred to Plaquemine in that State. The appellee learned of his being at this place, and in December, 1931, went there to endeavor to collect the money she had let him have. When he learned she was in town he reported the matter to his lawyer, and, as a result of his conversation with the lawyer, the latter procured the sheriff who took charge of the lady and searched her for a weapon. Finding none, she was released. She was unable to collect the money, however, and then asked

appellant to pay her hotel bill and to give her enough money to go back home, both of which he refused to do. According to appellee's statement, she learned definitely that appellant had married another woman while she was "at the races." A short time afterward she filed suit for divorce and alimony. She obtained a decree to reverse which this appeal is prosecuted.

As a defense to appellee's suit, appellant pleaded a divorce which he had obtained in the State of Morelos, Mexico, and further that she was estopped from prosecuting her present action because of acquiescence in the divorce decree granted in Mexico. The facts relating to this divorce are: Shortly after appellant established his residence in Bastrop, Louisiana, he went to Mexico on March 12, 1931, in order to obtain a divorce in that country. He stayed in the State of Morelos, Mexico, nine days, hired a lawyer, signed a power of attorney and returned to Bastrop. Later he received a certified copy of a decree of one of the courts of Mexico granting him a divorce from the appellee on the alleged ground of "incompatibility of temperament." From this decree it appears that suit was filed on March 17, 1931, and final decree was rendered on May 30, 1931. The appellant appeared in the Mexican court only one time, and, as before stated, signed a power of attorney. He gave no testimony by deposition, or otherwise in the Mexican court.

There is nothing in the record by which we are advised what the laws of Mexico are concerning divorce, but we presume they are such that some evidence must be taken to establish the grounds for divorce alleged, and that something more than a brief stay in the country is required to give the court jurisdiction of the person. Indulging that presumption, the decree obtained is clearly a fraud on the courts of Mexico, and would accordingly have no binding effect there or elsewhere. If, however, the laws of Mexico do not require any residence within its territory as a basis for jurisdiction excepting a mere entry and a stay for the number of days disclosed by this record, and no evidence to support the allegation for divorce, its decree is entitled to no faith and credit in this State, for as is said in *Bergeron* v.

*Bergeron,* 287 Mass. 524, 192 N. E. 86, "to recognize the Mexican divorce as valid in the circumstances here disclosed would frustrate and make vain all State laws regulating and limiting divorce. By such recognition State control over the marriage relation would be destroyed." Another reason why the Mexican divorce has no binding effect is that the ground alleged was "incompatibility of temperament" which is not a ground for divorce in Arkansas. The matrimonial domicile of the parties, during the time of their cohabitation as husband and wife, was at all times in this State, and any case for divorce urged by the appellant in a Mexican court on the residence proved must necessarily have occurred in Arkansas. No cause of action having been set forth, we cannot recognize the Mexican divorce upon the ground alleged.

"The first essential for the validity of a decree of divorce between parties is that it should be pronounced by a competent court of jurisdiction, and one of whom at least is a *bona fide* subject of that jurisdiction. Even in this country, where it is prescribed by the Constitution that full faith and credit must be given in each State to the judicial proceedings of another, it is well settled that the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction, and, if the want of jurisdiction appears on the face of the record, or is shown either as to subject-matter or the person, the record will be regarded as a nullity. The rule is certainly as strong, if not stronger, when applied to a court of a foreign county." *Ryder* v. *Ryder,* 2 Cal. Ct. App. (2d) 426, 37 Pacific (2d) 1069.

The contention that the appellee is estopped from questioning the validity of the Mexican divorce cannot be sustained, even were this question to rest upon the testimony of the appellant alone. The contention is based largely upon what occurred in Plaquemine. Appellant, in relating what was said by appellee regarding the decree of divorce in Mexico, and his contemplated marriage to another, testified: "Q. Did she know anything about your plans to be married? A. Apparently—she told me that I was planning on getting married in a week or so."

Further on in his testimony, he stated she said to his lawyer: "I was planning on getting married, but what I was going to do was to get myself in the penitentiary. I had gone to Mexico and gotten a divorce that wasn't any good." A few days after appellee's conversation with appellant's lawyer, the effect of which has been testified to by the appellant, he married again on December 24, 1931. If we accept appellant's testimony as true in all particulars regarding appellee's knowledge of the divorce and his intention to remarry, it is the reverse of acquiescence for she was denying the validity of the divorce and his right to marry again. Appellee testified that she did not know that the appellant had married again until a short time before she brought this suit. Whether she did, or did not, know of this marriage, she did nothing which tended to put the appellant to a disadvantage or to in any way estop her from contesting the validity of the Mexican divorce.

The trial court ordered the appellant to pay the appellee $25 per month as alimony, beginning on September 7, 1935, and continuing for a total period of twelve months. Appellant urges that this award was, in effect, an allowance of alimony in gross, and as such cannot be sustained under the rule announced in *Brown* v. *Brown*, 38 Ark. 324; *Walker* v. *Walker,* 147 Ark. 376, 227 S. W. 762, and *McIlroy* v. *McIlroy,* 191 Ark. 45, 83 S. W. (2d) 550. As a further reason for reversal of the judgment for alimony, it is urged that there is no evidence upon which to base the allowance. In support of this, appellant cites the case of *Rowell* v. *Rowell,* 184 Ark. 643, 43 S. W. (2d) 243, where we said: "Before a decree is passed or order for alimony is made, the court should be in possession either by the admission of the parties or by testimony, of all the facts necessary to form a just decision, * * * but the decree or order for alimony cannot rest upon mere presumption or conjecture." We recognize and adhere to the principles announced in the cases cited, but, under the peculiar facts as disclosed by this record, it cannot be said that the decree is violative of those principles. The evidence, both direct and circumstantial, is sufficient to justify the conclusion of the court below that the appel-

lant was able to pay the sum of $300 over a period of twelve months. It is shown that he is a member of one of the professions which usually carries with it employment over the greater portion of the time, and which, in one of the lean years (1931), paid him the sum of $185 a month which he considered below his usual earnings. The decree for alimony has some of the aspects of an award in gross within the meaning of the cases cited, but the chancellor evidently had in mind the amount of money appellant had obtained during the time he was married to the appellee, and, at the appellant's figure ($200), the alimony would amount to that sum with interest. The effect of the decree, therefore, was but to require the appellant to restore to the appellee the money which she had advanced to him. There can be no question, but that the decree of the chancellor in its entirety is correct, and is as liberal to the appellant as he could expect. The view we have reached as to the effect of the sum awarded appellee is such as to create an exception to the general rule laid down in the cases cited.

Affirmed.