Wheat *v.* Wheat.

5-1658                                                    318 S. W. 2d 793

Opinion delivered December 22, 1958.

*J. H. Spears,* for appellant.

*Rieves & Smith & Henry S. Wilson,* for appellee.

GEORGE ROSE SMITH, J. The only question here is the validity of Act 36 of 1957, which added the following provision to the statute governing the matter of residence in divorce cases: "The word 'residence' as used in Section 34-1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent and public policy of the State of Arkansas." Ark. Stats. 1947, § 34-1208.1. The effect of the 1957 statute is to substitute residence, in the sense of physical presence, for domicile as a jurisdictional requirement in divorce cases. The chancellor held the act unconstitutional and, finding that the plaintiff-appellant is not domiciled in Arkansas, dismissed his suit for divorce.

The parties were married in 1948 and were living in Maryland when they separated in 1952. The record does not show where the marriage ceremony was performed, but it was evidently in some state other than Arkansas. It is not contended that either of the parties had ever lived in Arkansas before the appellant came here in May of 1957. At that time he was transferred by his employer, a private corporation, to a station in Millington, Tennessee, which is some twenty miles northeast of West Memphis, Arkansas. Wheat rented an apartment in West Memphis and traveled back and forth each day to his work at Millington. After having thus resided in Arkansas for about three months Wheat filed this suit for a divorce, on the ground of three years separation. Mrs. Wheat, who is a resident of California, was served by warning order. She filed a cross-complaint asking for separate maintenance, but she denied the court's jurisdiction to grant a divorce. Although Wheat testified that he intends to make Arkansas his home, the weight of the evidence supports the chancellor's finding that Wheat has not established his domicile in this state. Hence the case turns upon the validity of Act 36, by which the jurisdictional requirement of domicile was abolished.

The legal history that lay behind Act 36 is well known. The Civil Code of 1869 required the plaintiff in a divorce case to prove residence in the state for one year next before the commencement of the action. C. & M. Dig., § 3505. In 1931 the legislature amended the statute to require only that the plaintiff prove residence for three months next before the judgment and for two months next before the commencement of the action. Ark. Stats., § 34-1208. In 1932 we held that the amended statute meant residence only, not domicile. *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281. This interpretation was followed until 1947, when we overruled the *Squire* case and held that the statutory reference to residence meant domicile. *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, noted in 2 Ark. L. Rev. 111. The *Cassen* case did not reach the constitutional

question now presented, as the decision involved only an issue of statutory construction. It cannot be doubted that by Act 36 the legislature intended to restore the rule of the *Squire* case, for the emergency clause in the act refers specifically to that decision and to the *Cassen* case.

Although the wisdom of Act 36 is of no concern to the courts, since the law of divorce is purely statutory, *Squire* v. *Squire, supra, Young* v. *Young,* 207 Ark. 36, 178 S. W. 2d 994, 152 A. L. R. 327, we may nevertheless observe that the act may well have been designed to prevent perjury. We know, of course, that the residential requirements for divorce vary greatly among the forty-nine states. In a decided majority of the states the plaintiff must have lived in the state for at least a year before filing suit. Louisiana and New York have no minimum period of residence, but their laws do not permit the courts to entertain cases where the state had no substantial connection with the marriage.

Arkansas is one of the five states in which the necessary period of residence is relatively short. In Idaho and Nevada the period is six weeks, in Wyoming sixty days, in Arkansas three months before judgment, and in Utah three months before the commencement of suit. At the time Act 36 was adopted all five of these states demanded proof of domicile as a condition to the granting of a divorce.

It is a matter of common knowledge that every year thousands of unhappily married persons, unable to obtain divorces at home, visit one or another of these five states in search of marital freedom. It is equally well known that the need for proof of domicile leads to perjury in a vast number of instances. The situation in Nevada, for example, has been described in these words: "It has been estimated that 8,616 divorces were granted in Nevada in 1942 and 11,399 in 1943, the great majority of which must have been obtained by non-residents who went to Nevada solely for divorce purposes, remaining there only the required six weeks. All the while they

contemplated returning to their home states immediately after their divorces were secured, yet they all swore falsely that they intended to make Nevada their permanent home, having been warned by local counsel that, unless they did so, they would be out of court. On advice of counsel they also took steps which would be accepted by the Nevada courts as corroborating their sworn statement but were actually nothing more than sham and camouflage. Upon such evidence the courts find that they acquired a Nevada domicil.'' Lorenzen, Extraterritorial Divorce—*Williams* v. *North Carolina II*, 54 Yale Law Journal 799, 801. We should be less than candid if we did not concede that similar instances of perjury have taken place in Arkansas. Act 36 goes far toward freeing litigants from the temptation to swear falsely on the issue of domicile.

To hold the act invalid we must be able to assert that it conflicts with some particular clause in the state or federal constitution. Only two clauses seem sufficiently pertinent to warrant discussion.

First is the full faith and credit clause of the federal constitution. This clause is now construed to mean that a divorce decree is not entitled to recognition in other states unless one of the parties was domiciled in the state where the decree was rendered, *Williams* v. *North Carolina*, 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, 143 A. L. R. 1273, with an exception which precludes either party from attacking the decree if the question of domicile was actually put in issue. *Sherrer* v. *Sherrer*, 334 U. S. 343, 92 L. Ed. 1429, 68 S. Ct. 1087, 1 A. L. R. 2d 1355.

The full faith and credit clause deals only with the extent to which the decree is entitled to recognition elsewhere. It does not purport to say that the decree is not valid in the state where rendered; still less does it intimate that the courts cannot be authorized to act at all in the absence of proof of domicile.

We do not question the desirability of having Arkansas divorce decrees receive recognition in other

states. That wish was the basic reason for the *Cassen* decision. But it must be remembered that a decree is not entitled to respect elsewhere merely because the statute exacts a showing of domicile as a condition to the maintenance of the suit, and this is true even though the court makes a finding that domicile does exist. The decree is still not conclusive of the issue, which may be re-examined in other jurisdictions. *Williams* v. *North Carolina*, 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092. Although Nevada ostensibly requires proof of domicile, we have refused to recognize a Nevada decree when the court's finding of domicile was clearly unsupported. *Cooper* v. *Cooper*, 225 Ark. 626, 284 S. W. 2d 617. With or without Act 36 the acceptance of any particular Arkansas decree by a court in another state will ultimately depend upon whether that court believes that an Arkansas domicile really existed. Even if the act deprives the decree of *prima facie* extraterritorial validity when the Arkansas court fails to make a finding of domicile, it was for the legislature to say whether this disadvantage is outweighed by the beneficial consequences of the statute.

The other constitutional provision to be considered is the due process clause. On this point the arguments on each side are examined in detail in the majority and minority opinions in *Alton* v. *Alton*, 3d Cir., 207 Fed. 2d 667, appeal dismissed as moot, 347 U. S. 610, 98 L. Ed. 987, 74 S. Ct. 736. See also *Granville-Smith* v. *Granville-Smith*, 349 U. S. 1, 99 L. Ed. 773, 75 S. Ct. 553. In the *Alton* case the Court of Appeals declared invalid a Virgin Islands statute which provided that six weeks residence should be *prima facie* evidence of domicile and, further, that if the defendant entered his appearance the court would have jurisdiction without reference to domicile. The facts were that Mrs. Alton brought suit for divorce after having resided in the Islands for the necessary six weeks. Her husband entered his appearance but made no defense. The trial court refused to grant a divorce without proof of domicile. The Court of Appeals, by a vote of four to three,

sustained the trial court, holding that the statute denied due process of law.

We have studied the majority opinion in the *Alton* case with much care but do not find it convincing. The Fourteenth Amendment declares that no state shall deprive any person of life, liberty, or property without due process of law. The question at once arises: What person was denied due process in the *Alton* case? The majority's answer is hardly satisfying: "The question may well be asked as to what the lack of due process is. The defendant is not complaining. Nevertheless, if the jurisdiction for divorce continues to be based on domicile, as we think it does, we believe it to be lack of due process for one state to take to itself the readjustment of domestic relations between those domiciled elsewhere." It will be seen that although Alton alone could have complained of a denial of due process and did not choose to do so, the court nevertheless found that his constitutional rights were somehow being violated.

In the case at bar Mrs. Wheat, unlike Alton, elects to contest the action for divorce and to attack the validity of Act 36. We may lay aside at the outset any question about procedural due process. It is not suggested that Mrs. Wheat is being denied notice or an opportunity to be heard. To the contrary, she invokes the court's jurisdiction by her request for separate maintenance. We also assume that there is no doubt about the power of the Arkansas courts to determine Mrs. Wheat's marital rights in any Arkansas property her husband may own.

The difficult question is raised by the theory, which was the basis for the *Alton* decision, that the marriage relationship is a *res* that remains always at the parties' common domicile, or at their separate domiciles, and is therefore beyond the reach of courts in other jurisdictions. See Rest., Conflict of Laws, § 110; Leflar, Arkansas Law of Conflict of Laws, § 133; and compare Corwin, Out-Haddocking Haddock, 93 Pa. L. Rev. 341. It will hardly do to side-step this issue by merely ob-

serving that the marital status in the domiciliary juris-
diction will not be affected if our decree is not entitled
to full faith and credit there.

With respect to the due process clause, as distin-
guished from the full faith and credit clause, we are not
convinced that domicile must be the sole basis for the ex-
ercise of jurisdiction over the marriage relationship.//As
the court observed in *Wallace* v. *Wallace,* 63 N. M. 414,
320 P. 2d 1020; "Where domicile is a statutory juris-
dictional prerequisite it is quite correct to say that juris-
diction for divorce is founded on this concept. It is
quite another matter to flatly declare that there may
be no other relation between a state and an individual
which will create a sufficient interest in the state under
the due process clause to give it power to decree di-
vorces . . . Precedent is not lacking for the conclu-
sion that divorce jurisdiction can be founded on cir-
cumstances other than domicile." The court concluded
that a soldier's residence in the state for a year, al-
though insufficient to establish domicile, was a reasona-
ble basis for the exercise of jurisdiction over the marital
status.

The appellee relies strongly upon the decision in
*Jennings* v. *Jennings,* 251 Ala. 73, 36 So. 2d 236, 3 A. L. R.
2d 662, where the court held invalid a statute permitting
nonresident couples to confer jurisdiction by consent and
thus obtain a divorce in Alabama with no residence there
at all. We agree with that decision, for there was no
reasonable basis for the exercise of jurisdiction over the
marital status.

It has been pointed out repeatedly that the theory
of basing divorce jurisdiction solely on domicile has led
to conflicting decisions and to legal confusion ever since
the theory was first formulated in connection with the
full faith and credit clause. Domicile differs from resi-
dence only in the existence of a subjective intent to re-
main more or less permanently in the particular state.
Whether that intent exists on the part of a person who
comes to Arkansas can seldom be proved with any meas-

ure of certainty. Often it is only after the court has decided this perplexing question that the lack of intent becomes apparent, as when the successful plaintiff immediately leaves the state. Although the court reached its decision in the utmost good faith, the want of domicile becomes retroactively so demonstrable that the issue must be decided the other way when the decree is relied upon in another state.

By Act 36 the legislature has substituted the simple requirement of three months residence, which can be proved with certainty, for the nebulous concept of domicile, which usually cannot be proved. We concede that the period of residence might be shortened so unreasonably, as in the *Jennings* case, as to indicate that the state has no reasonable basis for exercising jurisdiction over the marriage. We are not convinced, however, that the act before us is open to that criticism. Under the holding in *Squire* v. *Squire, supra,* the rule of Act 36 actually prevailed in this state for fifteen years. Now that the legislature has unmistakably expressed its intention in the matter, we do not feel that the due process clause compels us to say that its action is arbitrary.

Reversed.

HARRIS, C. J., concurs. HOLT and McFADDIN, JJ., dissent.

CARLETON HARRIS, Chief Justice, (concurring). I write this concurrence, not because I disagree with the reasoning of the majority, but simply to express my personal feelings on the issue involved. There has not been a case before this Court, subsequent to my entering upon the duties of this office, wherein my personal views have been so much in conflict with my interpretation of the law, or to state it simply, my "legal views." Perhaps my greatest interest, since entering upon judicial duties in 1949 (as Chancery Judge), has been the preservation of marital harmony, and the discouragement of divorce. My personal feeling is that legislation should be directed to making divorces more difficult to obtain rather than

easier to obtain, and I am unable to find too much consolation in the fact that, after all, the Act in question has no effect upon our *bona fide* citizens, but only affects those who take up a temporary residence for the purpose of obtaining a divorce. It might be added, that in my view, any divorce granted under the provisions of this statute, in numerous of our sister states, will probably be worth only the paper it is written on.

But while this legislation is personally repugnant to me, I have been forced to conclude that the legislature had full power to validly enact the provisions of Act 36 of 1957. It is not within the scope of our authority to pass upon the wisdom of legislation, or to hold an Act invalid because we deem it unwise; to take such a view, would propel the Court into the field of legislating, which, under our system of government, is entirely alien to the proper function of the judiciary. So—while I strongly disapprove of the legislation, and hope that the General Assembly will see fit to repeal Act 36, I am of the opinion, for the reasons set forth in the majority opinion, that the Act is valid.

J. S. HOLT and ED. F. McFADDIN, Associate Justices (dissenting). We respectfully dissent.

When this case was submitted the Honorable Minor W. Millwee was a Justice of this Court, and he prepared an opinion, which he hoped would be adopted. His opinion was not acceptable to the majority, and was never delivered. However, his views won our support; and he has given us permission to use his original opinion as our dissent. Here it is, just as he prepared it:

This appeal involves the validity of Act 36 of 1957 (Ark. Stats. Sections 34-1208 and 34-1208.1). The first section of the act provides *inter alia,* that no decree of divorce shall be granted until a plaintiff has maintained an actual residence in this State for three full months.

The second section (34-1208.1)[1] provides: "The word 'residence' as used in Section 34-1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent and public policy of the State of Arkansas."

The problem and issues presented are well stated in the following opinion rendered by the trial court as the basis for a decree holding the Act invalid:

"On August 6, 1957, Myron W. Wheat filed suit against his wife, Alice S. Wheat, for a divorce in Crittenden County. On August 28, 1957, Mrs. Wheat filed her answer in the action and alleged, among other things, that Mr. Wheat was not a *bona fide* resident of the State of Arkansas.

"On or about October 31, 1957, plaintiff completed the taking of his proof (all on depositions); and, on that data, the defendant filed her motion to dismiss the complaint 'for the reason that the evidence is insufficient to warrant the court granting the relief prayed . . .'

"Argument in support of this motion was based entirely upon the premise that when plaintiff rested in the development of his case, the evidence was not sufficient to warrant a finding that he was a *bona fide* resident of Arkansas. If that premise is correct, then the complaint must be dismissed and this action is at an end.

"Facts relative to residence (or domicile) of the plaintiff are undisputed except as to plaintiff's own personal statement that it is his intention to make Arkansas his permanent home. That self-serving conclusion is challenged by the defendant as being inconsistent with all other facts in the record.

"Though the fact does not appear of record, argument by plaintiff's counsel indicated that Mr. Wheat is a native of Oklahoma and was formerly a school teacher

---

[1] Act 36 designated this section as 34-1208(a) but this was changed by the compilers of Arkansas Statutes to preserve the uniformity of the numbering system of the statutes.

in that State. His mother still resides in Oklahoma. He has a married sister in Fort Smith, Arkansas.

"Mr. Wheat, now about 57 years old, is employed by North American Aviation Corporation, whose head-quarters are in Columbus, Ohio. The company has places of business all over the nation, especially around U. S. Air Force bases, and in foreign countries. Mr. Wheat is subject to transfer to a new location on 24-hour notice.

"The present Mrs. Wheat is plaintiff's third wife. The first wife went by way of a divorce in the State of Illinois; and the second one by the same route in the State of California. Dates of these events are not in the record. Plaintiff married the present Mrs. Wheat in February, 1948, but the place is not revealed. It was not in Arkansas. The parties never lived in Arkansas during their married life. They separated around July or August, 1952, in Leonardtown, Maryland.

"Following this separation, Mr. Wheat was trans-ferred from Maryland to Florida, where he purchased a home and brought suit against the present Mrs. Wheat for divorce. Mrs. Wheat resisted the Florida suit and it was, on advice of Mr. Wheat's counsel, dismissed by Mr. Wheat. While living in Florida, Mr. Wheat wrote his wife and advised that he was finding happiness there and intended to make it his permanent home.

"After a little more than two years in Florida, Mr. Wheat was transferred to Columbus, Ohio, for two months and thence to California. Plaintiff volunteered the information that while in California he formed an intention to make that State his permanent home. Several months later he was transferred to Pennsylvania; and on May 1, 1957, his employer transferred Mr. Wheat to duty at the Naval Air Station, Millington, Tennessee (near Memphis).

"On the 3rd or 4th day of May, 1957, plaintiff rented a furnished apartment at a motel in West Memphis (Crittenden County), Arkansas, and has been using that

as his home continuously since, to the extent that he sleeps there at night. He still (at the time of depositions) has a Pennsylvania license plate on his automobile and operates under a California driver's license. He has not assessed his automobile or anything else for tax purposes in Arkansas. His official, and only, mail address is 'P. O. Box 7, Memphis, Tennessee.' He drives fifty miles daily to and from his work at Millington, Tennessee. He says he pays $110.00 a month rent for his furnished apartment; his landlady says he pays $80.00 a month. At least one or two other persons who came to Arkansas for a divorce have lived in the same motel but they do not still live there.

"Plaintiff makes no pretense that he intends to make Crittenden County his permanent home. Instead, he says, 'I intend to go to the Ozarks in Arkansas' and settle down to a little farming and fishing.

"After considering all the foregoing facts carefully, and weighing them against the plaintiff's expressed intention to make Arkansas his permanent home, the court is not able to reach a satisfactory conclusion that Mr. Wheat is a *bona fide* resident of Arkansas. It is our finding that Mr. Wheat is not domiciled in Arkansas.

"Counsel for plaintiff directs our attention to Act 36 of 1957 and urges that, under its provisions, it is not material whether Wheat has an honest intention to make Arkansas his permanent home. This Act, it seems to the court, does specifically eliminate 'intention' as one of the elements of residence or domicile for divorce purposes and sets up a single element, to-wit: 'actual presence' in Arkansas 'for three full months'.

"Counsel for defendant urges that Act 36 of 1957 is void, and of no avail to plaintiff, because it was beyond the power of our State Legislature to remove 'intent' as an element of domicile. It appears that this Act has not been considered by our Supreme Court from any point of view. This court proceeds, therefore, to an evaluation of its validity.

"We draw our first ray of light from a general statement of the meaning of 'residence' and 'domicile' as it appears in 159 A.L.R. 499, to-wit:

'The weight of authority continues to be that a *bona fide* "residence", necessary under statutes in order to confer jurisdiction in divorce proceedings, is within the legal meaning of the word "domicile", that is, an *abode animo manendi,* a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart.'

From innumerable jurisdictions it is clear that 'intention' to establish a *bona fide* permanent home within the State is an indispensable element of residence or domicile as it relates to actions for divorce. *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242; *Sneed* v. *Sneed,* 14 Ariz. 17, 123 P. 312; *Wade* v. *Wade,* 93 Fla. 1004, 113 So. 374; *Perzel* v. *Perzel,* 91 Ky. 634, 15 S. W. 658; *Wright* v. *Genesee,* 117 Mich. 244, 75 N. W. 465; *Andrews* v. *Andrews,* 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366; *Bell* v *Bell,* 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804.

"In *Jennings* v. *Jennings,* 251 Ala. 73, 36 So. 2d 236, 3 A.L.R. 2d 662, the highest court of Alabama considered a problem very similar to the one at issue here. From the official opinion, we quote:

'* * * the statute provides that when the defendant is a nonresident of this state, the complainant need not be a resident of this state when the court has jurisdiction of both parties.

'Has the court by virtue of the statute the power to render a decree of divorce when not only the respondent, but also the complainant resides in another state?'

"If our finding in the case at bar that plaintiff is not a *bona fide* resident of Arkansas with an 'intention' to make this State his permanent home is a correct finding, then the foregoing question posed by the Alabama court defines our problem exactly. That court proceeded to answer its own question thus:

'Jurisdiction, which is the judicial power to grant a divorce, is founded on domicile under our system of law * * * This is true because domicile in the state gives the court jurisdiction of the marital status or the *res* which the court must have before it in order to act. * * * The domicile of one spouse, however, within the state gives power to that state to dissolve the marriage. * * * Unless one of the parties has a residence or domicile within the state, the parties cannot even by consent confer on the courts of that state power to grant a divorce. 17 Am. Jur. 273.'

'An act to be valid must be within the legislative jurisdiction of the enacting state. 59 C.J. 21 * * * Here the statute seeks to act on a status which is beyond the boundaries of the state. That it cannot do.'

"When one state undertakes to apply its marriage and divorce laws to a marital status in another state, then the sovereignty and jurisdiction of the other state is being invaded. Such an attempt by one state to control a marital status entirely within another state is *ultra vires*. A state legislature may not exercise powers which the state itself does not possess. *The People* v. *Dawell,* 25 Mich. 247, 12 Am. Rep. 260, 273; *Kegley* v. *Kegley,* 16 Cal. App. 2d 216, 60 P. 2d 482; *Lister* v. *Lister,* 86 N.J. Eq. 30, 97 A. 170; *Hood* v. *State,* 56 Ind. 263, 26 Am. Rep. 21.

"It is the conclusion of this court that 'intent' to establish a permanent home is an indispensable element of domicile; and that domicile of one of the parties is the only basis upon which Arkansas may dissolve a marriage by divorce. Applying that fundamental concept of law, it follows that the Arkansas Legislature exceeded its powers when, in Act 36 of 1957, it attempted to remove 'intent' as an element of domicile; and we declare said Act to be void and of no effect. The complaint herein will be dismissed at the cost of the plaintiff."

For reversal of the decree, the plaintiff-appellant relies primarily on *Young* v. *Young,* 207 Ark. 36, 178 S. W.

2d 994, where we held valid Act 20 of 1939 which abolished recrimination as a defense against three years separation as a ground for divorce. In doing so we pointed out that the legislature generally has the right to establish the grounds and conditions of divorce and that the plaintiff in that case had resided in the county where he brought suit fifteen months and made ample proof of a *bona fide* residence in Arkansas.

The authorities generally appear to be in accord with the Chancellor's holding that a court has no jurisdiction to grant a divorce when neither party is domiciled within the state. Since our decision in *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, we have consistently held that domicile of one of the parties is necessary to confer jurisdiction. In that case we said: ''Before a person can become a resident of this State so as to have his marital status determined by the courts of this State, he must, in truth and in fact, be a *bona fide* resident of the State, * * * A divorce decree in this State, to fulfill all the requirements for full faith and credit under the United States Constitution, can determine status only when there is a *bona fide* residence in this State. We quote from Sec. 111 of the American Law Institute's Restatement of the Law on Conflict of Laws: 'A state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state.' '' See also, *Oberstein* v. *Oberstein,* 217 Ark. 80, 228 S. W. 2d 615, where we said: ''In the case at bar neither spouse was ever domiciled in this State, so it is clear that the divorce decree rendered by the Garland Chancery Court in this cause on October 28, 1947, was a decree rendered without jurisdiction, and was and is void, and is not entitled to full faith and credit under Article IV, Sec. 1 of the United States Constitution.''

In Leflar, Conflict of Laws, Sec. 133, the learned author states: ''Since in legal theory the marital relationship is a status, or *res,* having a *situs* at the place where the married parties are domiciled, it follows that in legal theory an action undertaking to terminate the *res* in an

action *in rem,* to be maintained only at the *situs* of the *res,* towit, the domicile. That is the way the law has developed. If a divorce is granted at the place which is the common domicile of the husband and wife, it is valid, and everywhere entitled to full faith and credit. If a court purports to grant a divorce at a place which is the domicile of neither party, the decree is a complete nullity, and entitled to no faith or credit anywhere.'' The rationale of the rule requiring domicile as a basis for divorce jurisdiction is set forth by another well known authority on the subject in Goodrich, Conflict of Laws (3rd ed.) p. 396, as follows: ''Divorce, since it concerns the termination of the marital status, is a matter of state concern, and an act of law must accomplish it. What law? The natural answer would be the law of that place with which the person is most intimately concerned, the place 'where he dwelleth and hath his home'; in other words, his domicile. It is the law of the domicile which determines whether or not a marriage may be terminated by divorce. In marriage cases it has been shown that the marriage will generally be recognized as good by the domiciliary law, if valid by the law where contracted. This is not true of divorce. Here there is no general policy favoring termination of the relation. It is only allowed if at all upon statutory grounds. A divorce may be granted only for a cause recognized by the domiciliary law; furthermore, only a court at the domicile has jurisdiction to grant a divorce. This is true both in England and in the United States. In the language often used by the courts: 'This necessarily results from the right of every nation or state to determine the status of its own domiciled citizens * * *' '' See also Lorenzen, Extraterritorial Divorce—*William v. North Carolina II,* 54 Yale Law Journal 799.

In the famous second case of *Williams* v. *North Carolina,* 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366, Justice Frankfurter, speaking for the Court said: ''Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on

domicile. *Bell* v. *Bell,* 181 U. S. 175, 45 L. Ed. 804, 21 S. Ct. 551; *Andrews* v. *Andrews,* 188 U. S. 14, 47 L. Ed. 366, 23 S. Ct. 237. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it. Domicil implies a *nexus* between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse within a State gives power to that State, we have held, to dissolve a marriage wheresoever contracted. In view of *Williams* v. *North Carolina,* 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, 143 A.L.R. 1273, *supra,* the jurisdictional requirement of domicil is freed from confusing refinements about 'matrimonial domicil', see *Davis* v. *Davis,* 305 U. S. 32, 41, 83 L. Ed. 26, 30, 59 S. Ct. 3, 118 A.L.R. 1518, and the like. Divorce, like marriage, is of concern not merely to the immediate parties. If affects personal rights of the deepest significance. It also touches basic interests of society. Since divorce, like marriage, creates a new status, every consideration of policy makes it desirable that the effect should be the same wherever the question arises.''

It is true that *Williams* v. *North Carolina, supra,* and similar cases decided by the U. S. Supreme Court were concerned with the extra-territorial effect that must be given to a foreign decree under the full faith and credit clause, and did not involve the question of the validity of a non-domiciliary decree in the state where rendered, as did the Alabama case of *Jennings* v. *Jennings, supra.* After pointing this out on page 398 of his work on Conflict of Laws, *supra,* Judge Goodrich posed these questions: ''May we expect to see it decided that such a decree is not entitled to recognition where rendered, also? Since the Fourteenth Amendment, U.S.C.A. Const., a money judgment rendered against a defendant not before the court by virtue of allegiance, valid personal service, or consent, is void even in the jurisdiction where rendered. *Riverside & Dan River Cotton Mills* v. *Menefee,*

237 U. S. 189, 35 S. Ct. 579, 59 L. Ed. 910, 1915. Could not the same argument be applied to a case where a court has attempted to adjudicate upon the status of persons domiciled elsewhere and so is without jurisdiction in the international sense?''

Strangely enough, the author soon joined his colleagues in fashioning an affirmative answer to these questions. In *Alton* v. *Alton*, (C.C.A. 3rd Cir.) 207 F. 2d 667, the court considered the validity of a statute of the Virgin Islands which, in effect, declared six weeks residence by a plaintiff in a divorce action to be the equivalent to domicile where there was personal service on the defendant. After finding that the constitutional restrictions on the actions of a Virgin Islands government were substantially the same as those on the states, the majority held that the portion of the statute which empowered a court to grant a decree of divorce without reference to domicile violated the requirements of due process. Judge Goodrich, speaking for the majority, said: ''Before the days of the Fourteenth Amendment, a state could and some states did, pass rules for the exercise of jurisdiction against nonconsenting, nonresident absentee defendants. These rules were not based upon what are now considered the fundamental requisites for such jurisdiction. The judgments were not recognized in other states under the full faith and credit clause, but there was no foundation for testing their validity in the state where they were rendered. After the Fourteenth Amendment provided a way for testing the validity of these judgments in the rendering state under the due process clause, it became well settled that an attempt to give a personal judgment for money against one not subject to the state's jurisdiction was invalid at home under due process, as well as invalid abroad under full faith and credit. With regard to this type of case one can generalize and say that due process at home and full faith and credit in another state are correlative.

''The Restatement of Conflict of Laws says flatly that a state may not create an interest where it does not

have jurisdiction. Undoubtedly the result of a divorce decree is to affect interests in a matrimonial relationship. If it is still correct to say that the basis for divorce jurisdiction is domicile, a state where the party is not domiciled is, in rendering him a divorce, attempting to create an interest where it has no jurisdiction. Its attempt to do so is an invalid attempt, and contrary to the due process clause.

"We think that the premise that divorce jurisdiction is founded on domicile is still the law. It was reiterated by the Supreme Court in unequivocal language in the quotation cited above, which language is the more significant because of the strong dissent expressed by Mr. Justice Rutledge. If that premise is to disappear in the light of real or supposed change in social concepts, its disappearance should be the result of the action of higher authority than ours.

"The result suggested above is not spelled out in the books. If the Restatement generalization is correct the application necessarily follows. The Restatement generalization is demonstrably correct so far as a personal judgment for money is concerned. The arguable point here is whether in a world of changing modes jurisdiction for divorce based on domicile is as fundamental as the rule that you must have a defendant subject to your jurisdiction before you can give a personal judgment against him. Minority *dictum* from a member of the Supreme Court has indicated impatience with the domiciliary requirement.

"We think that adherence to the domiciliary requirement is necessary if our states are really to have control over the domestic relations of their citizens. The instant case would be typical * * * Domestic relations are a matter of concern to the state where a person is domiciled. An attempt by another jurisdiction to affect the relation of a foreign domiciliary is unconstitutional even though both parties are in court and neither one raises the question. The question may well be asked as to what the lack of due process is. The de-

fendant is not complaining. Nevertheless, if the jurisdiction for divorce continues to be based on domicile, as we think it does, we believe it to be lack of due process for one state to take to itself the readjustment of domestic relations between those domiciled elsewhere. The Supreme Court has in a number of cases used the due process clause to correct states which have passed beyond what the court has considered proper choice-of-law rules."

Although the U. S. Supreme Court granted *certiorari* in the *Alton* case, it became moot when the husband procured a divorce in another jurisdiction before the court reached it on the merits and the case was dismissed in *Alton* v. *Alton,* 347 U. S. 610, 74 S. Ct. 736, 98 L. Ed. 987. The problem came before the U. S. Supreme Court again in *Granville-Smith* v. *Granville-Smith,* 349 U. S. 1, 75 S. Ct. 553, 99 L. Ed. 773, where the material facts were the same as in the Alton case and the same result was reached in the Circuit Court of Appeals as in that case. The Supreme Court affirmed by a divided court but the majority did not explore the issue of jurisdiction and, instead, held that Congress had not given the Virgin Islands power to enact the statute.

The holdings in *Williams* v. *North Carolina* and similar cases as well as those in the *Jennings, Alton* and *Granville-Smith* cases have evoked much comment, critical and commendable, by law writers generally.[2] At least one state has adopted the reasoning of the dissenting judges in the *Williams* and *Alton* cases in dealing with the issue in cases which did not reach the U. S. Supreme Court. See *Wallace* v. *Wallace,* 63 N. M. 414, 320 P. 2d 1020, where the court held it was within the power of the Legislature to establish mere residence of the petitioner for one year as a basis for jurisdiction in the case of military personnel stationed in the state for that period. This conclusion is apparently bottomed on the theory that American divorce law has outgrown the

[2] Goodrich, Conflict of Laws, *supra;* 32 Va. L. Rev. 555; 93 U. of Pa. L. Rev. 341; 28 Harvard L. Rev. 930; 67 Harvard L. Rev. 615; 54 Yale L. J. 799, *supra;* 42 A.B.A. 225.

doctrine of jurisdiction *in rem;* and that a reasonable period of residence alone should be regarded as a sufficient substitute for domicile as a basis of jurisdiction. One able writer[3] feels that one year should be the minimum if mere residence is to be substituted for domicile while another[4] suggests that a six months period might be sufficient. Either period would present a much closer question than is in issue here. Even in Nevada, a petitioner is still theoretically required to prove domicile in addition to six weeks' residence before jurisdiction is acquired.

The problem presented in the instant case is difficult and highly controversial. Admittedly no clear, comprehensive and satisfactory basis for determining divorce jurisdiction in all cases has yet been devised either legislatively or judicially. Perhaps the most appropriate remedy would be for Congress to specify a period of residence which it deemed sufficient to satisfy the full faith and credit requirements of the U. S. Constitution. Until this or some similar action is taken, we are unwilling to abandon the traditional rule that domicile in the state is an indispensable requisite for divorce jurisdiction. Even while this court still adhered to the doctrine of *Squires* v. *Squires,* 186 Ark. 511, 54 S. W. 2d 281, it paradoxically refused to recognize or give any effect to a divorce granted in another jurisdiction which is the domicile of neither spouse. In doing so, we approved and followed the reasoning of those courts which hold to the domiciliary theory of jurisdiction and proclaim that recognition of the non-domiciliary decree would hopelessly frustrate and make vain all state laws regulating and limiting divorce. *Bethune* v. *Bethune,* 192 Ark. 811, 94 S. W. 2d 1043, 105 A.L.R. 814; Leflar, Conflict of Laws, Sec. 135.

Surely there is something fundamentally wrong with a judicial double standard under which the court of one state fondly embraces a jurisdictional practice within its

---

[3] Rabel, The Conflict of Laws—A Comparative Study, 397.
[4] Lorenzen, *Haddock* v. *Haddock,* Overruled, 52 Yale L.J. 352.

own realm which it condemns as downright reprehensible when indulged in by the courts of a sister state. We decline to lend a hand to such judicial amorality and duplicity. If domicile is the jurisdictional test for the compulsory recognition of a foreign divorce decree, as the U. S. Supreme Court has repeatedly held, then the same test should determine the validity of a decree in the state where rendered. In our opinion the holdings of the Alabama Supreme Court and the Circuit Court of Appeals to that effect in the *Jennings* and *Alton* cases, *supra,* are logical and sound.