Karen BIGGERS *v.* Philip BIGGERS

CA 83-367                                            666 S.W.2d 714

Court of Appeals of Arkansas
Division II
Opinion delivered March 21, 1984
[Rehearing denied April 18, 1984.]

*David B. Horne,* of *Kincaid, Horne & Trumbo,* for appellant.

*Jones & Segers,* for appellee.

TOM GLAZE, Judge. This is a custody case that involves the application of the Uniform Child Custody Jurisdiction Act (hereinafter the Uniform Act). On November 8, 1982, the trial court granted appellee, Philip Biggers, a default judgment, awarding him a divorce and the custody of the parties' two children, ages four and seven. Later the appellant, Karen Biggers, a Missouri domicillary, appeared specially in the divorce action, challenging the trial court's jurisdiction and requesting it to reconsider and to vacate its default judgment. Upon the trial court's refusal to do so, she filed this appeal wherein she contends the lower court lacked jurisdiction to make the custody award. We agree and therefore reverse.

At trial, Philip Biggers offered no testimony and for

purposes of this review, the facts are essentially undisputed. The parties were married and lived in Virginia until September, 1981, when they moved to Marshville, Missouri. Philip temporarily returned to Virginia to complete school but rejoined the family in Marshville in December, 1981. The Biggers separated in January, 1982. Philip moved to Springdale, Arkansas, and Karen and the children moved to Springfield, Missouri. During the first nine months in 1982, Karen retained physical custody of the children, but Philip had them for visitation purposes in April, July and August for a total of five weeks. On August 6, 1982, and unbeknownst to Karen, Philip filed for divorce in Arkansas and requested the court to award him custody of the children. Sometime prior to September 6, 1982, Philip told Karen that he intended to move the children to live with him, but Karen, at the time, was still unaware of the pending Arkansas action. He also informed his brother, Sam Biggers, of his plans for the children, stating, "No one was going to stand in his way." Sam encouraged Philip to go through the courts, but Philip indicated "he would not abide by any court order, that he wanted custody of the children and nothing could stop him." Sam, who lives in Springfield, Missouri, subsequently advised Karen to stay with friends "until the issue seemed to calm down." Apparently acting on that advice, she resided at five different homes between September 5, and October 2, 1982. On September 10, 1982, Karen filed a divorce action in Missouri; however, on October 2, before he was served in the Missouri action, Philip located Karen residing with the Willoughby family. Philip and his two younger brothers forceably entered the house, beat Mr. Willoughby, injured Karen and left with the children, taking them to Arkansas. As previously noted, Philip obtained the default divorce judgment and custody award on November 8, 1982, but Karen claimed she was unaware of such action until December, 1982.

Appellant argues (1) the Arkansas court lacked in personam jurisdiction to affect or divest her of custody of the children, and (2) appellee failed to obtain lawful service of process on appellant, thus rendering the court's order void *ab initio*. Specifically, appellant maintains that under *May v. Anderson*, 345 U.S. 528 (1953), her right to custody of the

children is personal, and a court must have in personam jurisdiction over her before terminating such a right. Because she has had no contacts with this State, appellant asserts the Arkansas court has no basis upon which it can exercise personal jurisdiction over her in this custody action. *Cf. Bunker* v. *Bunker*, 261 Ark. 851, 552 S.W.2d 641 (1977); and *Pawlik* v. *Pawlik*, 2 Ark. App. 257, 620 S.W.2d 310 (1981). She further argues the appellee failed in two respects to comply with Arkansas requirements for personal service by mail. In sum, she denies having any knowledge of the four complaints and summonses mailed her and contends she never refused service even though two envelopes were returned marked "refused." She also contends that because appellee obtained a default judgment, he was required to have the court appoint an attorney *ad litem*, and his failure to do so invalidated the court's decree.[1] *See Aldridge* v. *Watling Ladder Co.*, 275 Ark. 225, 628 S.W.2d 322 (1982).

While appellee argues against appellant's foregoing contentions, his primary argument is that appellant has subjected herself to the Arkansas court's jurisdiction, because even though she appeared specially before the lower court to challenge its jurisdiction, she also requested and was awarded affirmative relief — limited visitation rights with her children.[2] As a consequence, he urges the appellant waived all objections to the court's jurisdiction. Such an argument was advanced successfully in the case of *Holley* v. *Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978). Although the *Holley* decision is distinguishable, we believe it is worthy of discussion. There the appellant (former wife) instituted an action against the appellee (former husband) under the Uniform Enforcement of Foreign Judgments Act to enforce payment of child support arrearages. Although appellee demurred to the court's jurisdiction of his person and of the

---

[1]By per curiam order, the Supreme Court amended Rule 4(i) of the Arkansas Rules of Civil Procedure, excising this *ad litem* requirement in default judgment cases. *In Re: Amendments to the Rules of Civil Procedure*, 279 Ark. 470, 651 S.W.2d 63 (1983).

[2]After this cause was appealed, appellant also moved to change custody, but that request and its disposition, if any, by the trial court are not a part of this appeal.

subject matter, he counter-petitioned for a change in custody of the children or in the alternative, for substantial visitation rights. The Supreme Court held the appellee's request for relief placed him in a position of waiving all his objections to the court's jurisdiction.

Although there are similarities between the present situation and the one in *Holley*, one essential difference distinguishes the two. As pointed out by Justice Fogleman in *Holley*, the Arkansas court would have had jurisdiction and power to act in an action on a foreign judgment even in the absence of the Uniform Foreign Judgment Act. In the present situation, however, we are required to look to the Uniform Act to determine whether the Arkansas trial court had jurisdiction to decide the custody matter. *See* Ark. Stat. Ann. §§ 34-2701—2708 (Supp. 1983), and more particularly § 34-2703.

The Uniform Act changes prior custody jurisdiction law in that (1) it eliminates physical presence of the child as a jurisdictional basis in all but the most extreme emergency cases; (2) it establishes specific and limiting jurisdictional bases for initial decrees; and (3) it establishes even further jurisdictional limitations for the modification of existing decrees. *See* Uniform Child Custody Jurisdiction Act, 9 U.L.A. 116 §§ 3, 6 and 14 Commissioner's Notes (1979). The "home state" and "significant connection" bases are the two primary means by which an Arkansas court can acquire jurisdiction under the Uniform Act.[3]

Home state is defined in § 34-2702(5):

(5) "[H]ome state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent,

---

[3]Sections 34-2703(a)(3) and (4) set forth two other means, but they are inapplicable to the facts at bar and deal only with situations (1) when the child is present in the State and has been abandoned, abused or otherwise neglected, and (2) when the jurisdictional prerequisites in §§ 34-2703(a)(1)(2) and (3) do not exist in another state, or another state has declined jurisdiction and it is in the child's best interest to assume jurisdiction.

for at least six (6) consecutive months, and in the case of a child less than six (6) months old. The state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period. . . .

Home state jurisdiction is described in § 34-2703(a)(1):

(1) [T]his State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State. . . .

Finally, the significant connection basis is set forth in § 34-2703(a)(2):

(2) [I]t is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one [1] contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

Applying the foregoing applicable provisions to the facts of this case, Missouri is clearly the home state of the parties' children. The children lived with their mother in Missouri for more than seven months prior to the filing of appellee's divorce action in Arkansas; and they were in Missouri nine or ten months before appellee served or attempted to serve the appellant with copies of such action. Thus, if the Arkansas court acquired jurisdiciton at all, it had to have done so because the appellee and the children had a significant connection with this State. *See* § 34-2703(a)(2)(i).

While the Uniform Act does not define "significant

connection," the Commissioners, in discussing this jurisdictional requirement in their Note to section 3, indicate that the interest of the child is served when the forum has optimum access to relevant evidence about the child and family, and that there must be maximum rather than minimum contact with the state. The Note further reflects that the submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient (to establish that contact) without additional factors establishing closer ties with the State. *See* Uniform Child Custody Jurisdiction Act, *supra* § 3 Commissioner's Note; *cf. Jackson* v. *Jackson*, 390 So. 2d 787 (Fla. Dist. Ct. App. 1980).

Again, from our review of the record, we find the "significant connection" basis lacking; consequently, the Arkansas court simply had no jurisdictional basis upon which to act on the child custody matter. We first point out that the trial judge never made any finding regarding either the home state or the significant connection jurisdictional prerequisites. Instead, the judge assumed jurisdiction in this cause because the children were physically present in the State. However, as we mentioned previously, the physical presence of the child is not a prerequisite under the Uniform Act for jurisdiction to determine his or her custody. *See* Ark. Stat. Ann. § 34-2703(c) (Supp. 1983). Aside from the fact that a child's presence is not a jurisdictional requirement, the two children here were in Arkansas only because appellee abducted them from their residence in Missouri, their home state; and the purpose of the abduction was to afford appellee the opportunity to obtain a custody award of the children by an Arkansas court. Appellee's actions clearly contravene one of the primary purposes of the Uniform Act — to deter abductions and other unilateral removals of children undertaken to obtain custody awards. *See* § 34-2701(a)(5).

Turning to appellee's connection with Arkansas, we find his only contacts are that he now resides and works in this State. The children's contact with Arkansas included three visits to see their father and involved a total of five weeks over a period of nine to ten months — the time appellee had resided in Arkansas. In contrast, the parties'

last matrimonial domicile, albeit short, was Missouri. In fact, appellee selected Missouri as the family's domicile while he returned to finish school in Virginia. As we earlier noted, the children's home state was Missouri and that State also is where at least part of their extended family lives. Undoubtedly, the children's maximum contacts were in Missouri at the time the Arkansas action was commenced. Because Arkansas does not meet the jurisdictional requirements under § 34-2703, the trial court did not have authority to decide the child custody issue presented it by the appellee. Accordingly, we reverse and remand this cause with directions to the trial court to enter an order finding that it has no subject matter jurisdiction over the custody issue raised by the appellee, and that its earlier judgment should be amended to reflect such finding.

Reversed and remanded.

COOPER and CORBIN, JJ., agree.