James Ronald POMRANING v. Carol Ann POMRANING

CA 84-169                                    682 S.W.2d 775

Court of Appeals of Arkansas
Division II
Opinion delivered January 23, 1985
[Rehearing denied February 20, 1985.]

*Jerry Ryan,* for appellant.

*Phillip B. Boudreaux,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. James Ronald Pomraning appeals from a divorce decree entered in the chancery court of Polk County. He contends that the chancellor erred both in granting the divorce when appellee failed to prove and corroborate statutory grounds and in assuming jurisdiction to determine the issue of child custody. We do not agree.

The appellee sought her divorce on grounds of indignities. Divorce is a creature of statute and can only be granted when statutory grounds have been proved and corroborated. Ark. Stat. Ann. § 34-1202 (Supp. 1983) authorizes the granting of a divorce when one spouse proves that the other had offered such indignities to her person as to render her condition in life intolerable. Personal indignities may consist of rudeness, unmerited reproach, contempt, studied neglect, open insult and other plain manifestations of settled hate, alienation or estrangement so habitually, continuously and permanently pursued as to create that intolerable condition contemplated by the statute. *Copeland* v. *Copeland,* 2 Ark. App. 55, 616 S.W.2d 773 (1981).

Appellee testified that during the marriage appellant was constantly angry at her and would not speak to her for days at a time except in situations of necessity. This behavior occurred every two or three weeks throughout the marriage. He openly criticized her about her housekeeping and the way she cared for the children. He showed her little affection. On two occasions he lost his temper and became

"physical" with her. On one occasion they were separated for over three months and during this period he did not provide any support for her or their child. They were reconciled thereafter but his conduct toward her continued to be the same. She stated that she had separated from him five months before the hearing and he had contributed nothing toward her support or that of the children, although he visited them regularly. As a result of the "constant fighting" she has developed health problems. This testimony, if believed, would constitute acts of rudeness or unmerited reproach, studied neglect and other manifestations mentioned in *Copeland.*

Corroboration is testimony of a substantial fact or circumstance, independent of the statement of a complaining spouse, which leads a reasonable mind to believe that the material testimony of that spouse is true. Corroborating testimony may not consist of mere generalities or opinions, beliefs and conclusions on the part of the witness but must be directed toward specific language, acts and conduct. *Welch* v. *Welch,* 254 Ark. 84, 491 S.W.2d 598 (1973); *Copeland* v. *Copeland, supra.* In a contested matter in which it is apparent that there is no collusion the corroboration required may be relatively slight. *Copeland* v. *Copeland, supra; Coffey* v. *Coffey,* 223 Ark. 607, 267 S.W.2d 499 (1954).

The appellee's mother testified that she regularly visited in the parties' home every six to eight weeks and had an opportunity to observe their relationship. She stated that appellant would not communicate with appellee and would never talk to her during meals. He criticized her about everything, including the house and the food. This reproach took place in her presence, and she stated that any criticism about her housework and care of the children was wholly unmerited. She stated that he had yelled and screamed at appellee in her presence and that she knew that the appellee was nervous and distressed and had developed an upset stomach as a result of it. At the time she had left the appellant she had lost a lot of weight, but since the separation she has relaxed, eats better, and has gained weight. This testimony adequately corroborates the appellee's statements as to rudeness, unmerited reproach, contempt and studied neglect.

Although the appellant denied any marital misconduct we give due regard to the chancellor's superior position to determine the weight of the testimony and the credibility of the witnesses. Although we review chancery cases *de novo,* we do not disturb a chancellor's finding unless it is clearly against a preponderance of the evidence. ARCP Rule 52(a); *Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981).

Prior to her marriage appellee had been a lifelong resident of Arkansas. In 1979 she married the appellant in Louisiana and maintained her marital domicile in that state until July 28, 1983 when she separated from her husband and brought her two children to her mother's home in Mena. On September 27, 1983 she filed suit in Arkansas seeking a divorce and custody of the two children. The appellant appeared, answered and prayed that, if a divorce be granted, he be awarded joint custody of the two children.

The case was set for trial on December 29, 1983 but was continued until January 5, 1984 because of a winter storm. On January 3rd the appellant filed an amended answer challenging the court's jurisdiction to determine the custody issue and asserting that because Louisiana was the home state of the children the Arkansas court lacked jurisdiction under Ark. Stat. Ann. § 34-2701(a) (Supp. 1983). The following day he obtained an Ex Parte order from the Louisiana court finding that Louisiana had jurisdiction of the custody issue and directing the appellee to appear and show cause why the children should not be placed in the appellant's custody. On January 5th the appellant presented his motion to dismiss to the chancellor and exhibited the Louisiana order. The chancellor denied the motion.

Appellant contends that the chancellor lacked jurisdiction to make a custody determination under the provisions of the Uniform Child Custody Jurisdiction Act, Ark. Stat. Ann. §§ 34-2701 et seq (Supp. 1983). Ark. Stat. Ann. § 34-2703 deals with jurisdictional requisites for custody determinations and states in pertinent part that a court has jurisdiction if:

(a) (1) this State (i) is the home state of the child at the

time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding . . . *or*

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; *or*

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; *or*

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction. [Emphasis supplied]

Ark. Stat. Ann. § 34-2702(5) defines "home state" as the one in which the child has resided with one or both parents for at least six consecutive months immediately preceding the time involved.

Appellant primarily argues that as the children had not resided in this state for six months preceding the commencement of appellee's action, the court lacked jurisdiction of that issue under § 34-2703(a)(1). This argument must fail because the section as a whole provides for alternate bases for jurisdiction, only one of which is based on establishing a "home state." Subsection (a)(1) *confers* jurisdiction in any event if the child has resided in this state for six consecutive months before the commencement of the action. Subsections (a)(2), (3) and (4) outline those circumstances under which

jurisdiction is conferred where the child has resided here for less than 6 months.

The chancellor found that he did have jurisdiction under subsection (a)(2) which confers jurisdiction where it is shown that the child and at least one parent have significant connections with this state and there is available in the state substantial evidence concerning the child's present or future care, training and personal relationships.

We find no error in the chancellor's conclusion. Appellee was born and raised in this state and lived most of her life in Polk County. She was not "shopping" to find a forum in which to obtain a divorce and custody order but was returning to the home in which she had been raised and to which she had returned on both occasions when marital problems developed. The children were present in this state and had been for several months. The older child had resided in Polk County during an earlier separation. The maternal grandparents with whom both appellee and her children had maintained a close relationship resided there. They had provided appellee and the child a home and financial support during her first and second separations from the appellant and gave assurance that they would do so for so long as was necessary. The appellee considered Mena her home and stated her intention to remain in that community indefinitely. A full contested hearing was had before the chancellor with both parties present. Appellant does not point out to us any evidence regarding the child's present or future care which was not made known to the chancellor. under these circumstances the fact that appellee and her children had lived in this state for a shorter period than that required to establish it as their "home state" did not preclude jurisdiction over the custody issue.

The facts in this case are readily distinguishable from those in *Biggers* v. *Biggers,* 11 Ark. App. 62, 666 S.W.2d 714 (1984) and *Hogan* v. *Durgan,* 11 Ark. App. 172, 668 S.W.2d 57 (1984). In *Hogan* the child's home state was in the State of Washington and neither she nor her mother had ever been in or had any connection with Arkansas. In *Biggers* the home state of the children and their mother was Missouri. The

only connection with this state was that the father had moved here after the divorce. The children had been in this state only on short and infrequent visits and were present at the time of the hearing only because their father had abducted them and brought them here for the purpose of obtaining a custody award.

Appellant also contends that the chancellor should have declined to exercise jurisdiction because Louisiana was a more convenient forum. Ark. Stat. Ann. § 34-2707 provides that a court *may* decline to exercise its jurisdiction on a custody determination where it finds it to be an inconvenient forum taking into account the fact that another state was the child's home state or has a closer connection with the child and parent, or that evidence of present and future care is more readily available in another state. Considering the factors previously outlined we cannot conclude that the chancellor abused his discretion in deciding to exercise jurisdiction in this case.

Affirmed.

CLONINGER and COOPER, JJ., agree.