James D. KNOX *v.* Madalyn D. KNOX

CA 87-444                            753 S.W.2d 290

Court of Appeals of Arkansas
Division II
Opinion delivered July 6, 1988

*W. Bruce Leasure*, for appellant.

*Judieth P. Balentine*, for appellee.

GEORGE K. CRACRAFT, Judge. James D. Knox appeals from an order of the chancery court of Pulaski County denying his petition to vacate a divorce decree entered by that court and holding him liable for child support payments accrued under it. On appeal, he contends that the court lacked personal jurisdiction over him sufficient to resolve the property division and child-support issues and also lacked jurisdiction to determine custody of the parties' minor child. We affirm.

On February 24, 1986, the appellee brought an action for divorce in Pulaski County, Arkansas, alleging that she had been a resident of that county for more than sixty days, that the appellant was a resident of Tennessee, and that appellant had

subjected her to intolerable indignities, for which she was entitled to a divorce, custody of their child, a division of property, and an award of child support. The record shows that appellant was served with a copy of the complaint and summons delivered to him by certified mail in the State of Tennessee as permitted by Ark. R. Civ. P. 4(e) (3). The appellant filed a special appearance challenging the jurisdiction of the Arkansas court on the grounds that a complaint for divorce had already been filed in Tennessee, the parties were married and had lived in Tennessee, and the property was located in Tennessee. He contended that Tennessee was the only forum having jurisdiction of the property and child-related issues.

On April 22, 1986, former chancellor Bruce Bullion entered a decree reciting that appellant had not answered "though having been duly notified in compliance with Arkansas law by being notified by certified mail for which he personally signed." The decree further recited that appellee was present in person and through her attorney, and that an attorney from Memphis, Tennessee, had appeared seeking to represent the appellant but was not accompanied by an attorney authorized to practice in Arkansas. The decree recited that the Memphis attorney was present throughout the hearing and asked questions. The decree further recited that the court heard testimony of the appellee and five other witnesses, and, after considering the pleadings, testimony, exhibits, arguments of counsel, and other things and matters presented before it, found that "Madalyn D. Knox is a resident of the State of Arkansas and this court has jurisdiction over the parties and subject matter before it." The court found that the appellee had established her grounds for divorce, awarded her a divorce and custody of the minor child, ordered a division of the parties' property, and directed appellant to pay child support in the amount of $313.90 per month. No appeal was taken from that decree nor was the evidence heard by Judge Bullion preserved or brought forward in the record.

Over a year later, the appellee obtained a show-cause order directing appellant to appear and show cause why he should not be held in contempt for failure to pay the ordered child support. Appellant then filed a "Special Appearance for the Purpose of Contesting Jurisdiction and Motion to Set Aside the Divorce Decree as Void for Lack of Jurisdiction." In this petition, he

contended that the court was without jurisdiction to enter the decree of April 22, 1986, and that the decree should be set aside for that reason.

On September 28, 1987, the present chancellor, Ellen Brantley, conducted a hearing on appellee's motion for contempt and appellant's petition to vacate the decree. After the hearing, Judge Brantley concluded that appellant's conduct in accepting the benefits of the decree, including the property awarded him, estopped him from asserting that the original decree was invalid because the court had lacked jurisdiction of his person. We conclude that this finding was a permissible one on the evidence presented at that hearing. *Anderson v. Anderson,* 223 Ark. 571, 267 S.W. 2d 316 (1954).

There are, however, even more compelling reasons why that defense was not available to the appellant. Service was had on him in the State of Tennessee in the manner provided for service of summons outside this state as provided in Ark. R. Civ. P. 4(e)(3). In *Bunker v. Bunker,* 261 Ark. 851, 552 S.W.2d 641 (1977), the supreme court held that the acquisition of personal jurisdiction under our so-called "long-arm statute," Ark. Code Ann. § 16-58-120 (1987) (formerly Ark. Stat. Ann. § 27-339.1 (Repl. 1979)), is not restricted to tort actions but applies to *all* causes of action arising out of acts done within this state, including divorce, alimony, support, and property division. The court also held in *Bunker* that whether the exercise of jurisdiction on the basis of acts done within this state is reasonable depends on the "basic fairness" test of due process and on consideration of factors set forth in that opinion. Whether the acts of a nonresident are sufficient to give rise to a cause of action in this state and whether the basic fairness requirements are met are questions of fact for initial determination in the trial court. *Id.*

When a nonresident defendant is served with process outside this state, he has more than one option. He may elect one or the other but may not pursue both. If he has confidence in his belief that the jurisdictional facts required in *Bunker* do not exist, he may elect to do nothing, risk the entry of default judgment against him, and assert his defense of lack of personal jurisdiction when the judgment is sought to be enforced against him in his home state. *Hanson v. Denckla,* 357 U.S. 235 (1958); *Baldwin v.*

*Iowa State Traveling Men's Association,* 283 U.S. 522 (1931); *Hawes Firearm Co.* v. *Roberts,* 263 Ark. 510, 565 S.W. 2d 620 (1978). The nonresident may, on the other hand, elect to raise those jurisdictional issues in the trial court from which that summons was issued. However, if he does so, he submits himself to the jurisdiction of that court on those issues and, if aggrieved by the court's determination as to its jurisdiction, the error must be corrected on appeal. If he fails to appeal the ruling, or is unsuccessful in his appeal, he is estopped from thereafter raising that issue in any court. *Brown & Hackney, Inc.* v. *Stephenson,* 157 Ark. 470, 248 S.W. 556 (1923); *Ederheimer* v. *Carson Dry Goods Co.,* 105 Ark. 485, 152 S.W. 142 (1912). *See also Insurance Corporation of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982); *Chicot County Drainage District* v. *Baxter State Bank,* 308 U.S. 370 (1940); *Baldwin* v. *Iowa State Traveling Men's Association, supra;* 5 Am. Jur. 2d *Appearance* § 4 (1962).

The rule of general application is perhaps best stated in the Restatement of Judgments as follows:

> Where, however, the defendant appears in the action only to object that the court has no jurisdiction over him, that is where he enters a special appearance, the court does not acquire jurisdiction over him because of his appearance (see § 20), *except to decide the question so raised.* But if the court determines that it has jurisdiction over him, even though that determination is erroneous on the facts (see Illustrations 1 and 2) or on the law (see Illustration 3), the determination is res judicata between the parties. This is an application of the general principle of res judicata, precluding the parties from relitigating a matter determined by a court after a fair opportunity has been afforded to them to litigate the matter (see § 1).

> If the defendant appears in an action for the purpose of objecting that the court has no jurisdiction over him, he thereby *submits to the court for its determination the question whether the court has jurisdiction over him.* If the court erroneously determines that it has jurisdiction over the defendant, he has ground for reversal in an appellate court, and ground for carrying the case to the

Supreme Court of the United States since a judgment rendered against him by a court having no jurisdiction over him deprives him of property without due process of law in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. If, however, he does not avail himself of these remedies, or if the judgment is affirmed, or if the appellate court or the Supreme Court of the United States declines to consider the case, the defendant cannot thereafter successfully contend that the judgment was void, even though in fact the court had no jurisdiction over him. The defendant, having submitted the question of jurisdiction to the court, the court has jurisdiction to determine the question of its jurisdiction over the defendant, and the determination of that question is res judicata.

Restatement of Judgments § 9 comment a (1942) (emphasis added). In his treatise on conflict of laws, Dr. Robert Leflar states: "This has been called the 'bootstrap doctrine,' the idea being that a court which initially had no jurisdiction can, when the issue is litigated, lift itself into jurisdiction by its own possibly mistaken but *conclusive finding* that it does have jurisdiction." R. Leflar, L. McDougal and R. Felix, *American Conflicts Law* § 79 (4th ed. 1986) (emphasis added).

■ The decree in which the award of child support was made recognized and recited that the appellant was a resident of Tennessee and was served within that state, but the court found that it had jurisdiction of the subject matter and the persons of the parties. The appellant had submitted himself to the jurisdiction of the court on that issue by the entry of his "special appearance" and, as there was no appeal from the court's finding and decree, it became final and binding as to the factual determination of jurisdiction, whether or not correctly decided. The appellant was afforded his day in court on his special appearance and is not entitled to another one under the doctrines of *res judicata* and estoppel by judgment.

■ In oral argument, appellant contended that he was prevented by actions of the chancellor from fully presenting his motion to quash the summons at the divorce hearing. In the absence of a record, we do not know what transpired at that

hearing. However, by filing his motion questioning jurisdiction, appellant submitted that issue to the court and was bound by its determination from which he failed to appeal. If he felt aggrieved by a factual determination, procedural error, or discretionary ruling, he should have sought correction of it on appeal. Once the issue was submitted to the court, he could not simply walk away from the arena and begin his attack anew at some other time and place.

■ Even if the issue of the court's jurisdiction was an open one at the time of the second hearing, the result must be the same. The motion constituted a collateral attack on the decree. As the decree recited that the court had jurisdiction of the persons and subject matter, it will be presumed, until the contrary appears, that the court had facts before it on which to base its finding. *Frazier* v. *Merrill,* 237 Ark. 242, 372 S.W.2d 264 (1963); *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390, 142 S.W. 836 (1911); *Hearns* v. *Ayres,* 77 Ark. 497, 92 S.W. 768 (1906). The burden of proving the contrary rests on the party attacking the decree. At the hearing, appellant did not testify or present affirmative evidence that the jurisdictional facts had not been shown or did not exist. Appellee's testimony related primarily to the issue of child support arrearages and appellant's acceptance of the benefits of the decree. There was no evidence that during the numerous visits to Arkansas appellant committed no act which would give rise to a cause of action sufficient to invoke our long-arm statute. Appellee had no burden to prove the existence of those facts which were presumed to exist.

■ The divorce decree recited that the appellant had been properly served with summons, and the court found that it had jurisdiction of his person and the subject matter of the action. None of the evidence considered by Judge Bullion on either finding is included in the transcript of the record presented to us or was before Judge Brantley on the motion to vacate. Although both parties based arguments on facts assumed to have been before Judge Bullion, we are bound by the record before us. When jurisdiction of a court of general jurisdiction depends on facts not appearing in the ·record, it will be presumed in a collateral proceeding that the court did have facts before it on which to base its finding in favor of its jurisdiction. *Frazier* v. *Merrill, supra; Crittenden Lumber Co.* v. *McDougal, supra; Hearn* v. *Ayres,*

*supra.*

■ Whether a chancery court of this state should exercise its jurisdiction to enter a custodial order under the provisions of Ark. Code Ann. § 9-13-203(a)(2) (1987) (formerly Ark. Stat. Ann. § 34-2703(a)(2) (Supp. 1985)) also depends on the resolution of questions of fact. *Pomraning* v. *Pomraning,* 13 Ark. App. 258, 682 S.W.2d 775 (1985). The rules set out above regarding *res judicata* and the presumptions in favor of the court's findings in the absence of a record apply equally to this issue. Furthermore, even if this issue could properly have been raised at the hearing before Judge Brantley, appellee stated at that hearing that she was born and raised in Little Rock and educated in its public schools. She graduated from our state university at Fayetteville. After her marriage she resided for four years in Memphis, Tennessee. Her parents and a number of close relatives continued to reside in Pulaski County, Arkansas. During her marriage she visited her parents here at least once monthly. On a number of occasions the child remained with appellee's parents while she and appellant were on vacation trips. On one prior occasion when domestic problems arose, she and the child returned to her parents' home. At one time they resided in her parents' home for over a month while appellant sought alcoholic rehabilitation in an Arkansas institution. At the time of the divorce hearing appellee and the child had been in this state for over four months. These facts are strikingly similar to those in *Pomraning* v. *Pomraning, supra,* in which we upheld the court's exercise of its jurisdiction to determine custody, and we cannot conclude that the court erred in so exercising its jurisdiction in this case.

Affirmed.

MAYFIELD and JENNINGS, JJ., agree.