ANDERSON *v.* ANDERSON.

5-398                                                       267 S. W. 2d 316

Opinion delivered April 26, 1954.

*Sam Rorex,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

ROBINSON, J. This is an appeal from an order denying a petition to set aside a decree of divorce. On the 27th day of June, 1952, appellee Hallam H. Anderson filed suit in the Pulaski Chancery Court, First Division, alleging that he and appellant herein, Florence P. Anderson, were husband and wife but had lived separate and apart for about 10 years, and asked for a divorce on the

grounds of 3 years separation. He alleged that he was a citizen and resident of Pulaski County, Arkansas. On the 10th day of July appellant filed an entry of appearance and waiver in which she acknowledged receipt of a copy of the complaint, waived service of process, entered her appearance in the cause, and agreed that the plaintiff could take certain depositions without further notice to her. On the same day she filed an answer which was a general denial.

Upon a trial of the cause, appellee introduced evidence to the effect that he resided at 1615 West 12th Street, Apt. No. 2, Little Rock, and had lived there for a sufficient time to establish residence within the requirements of our divorce laws. The trial resulted in a decree granting Mr. Anderson a divorce, and requiring him to pay to Mrs. Anderson a sum exceeding $60,000. No appeal was taken from this decree.

About 6 months later, after the term of court had expired and after Anderson had paid Mrs. Anderson the full amount provided by the decree, she filed a petition to set aside the decree, alleging that Anderson was not a resident as required by the laws of this state. Appellee Anderson filed a motion to dismiss the petition, alleging that the term of court at which the decree was entered had expired; that the petitioner had personally entered her appearance and was represented by an attorney who was present in the courtroom and participated in the original trial; that no appeal was taken from the Chancellor's decree; that all of the issues were before the court at the original hearing including the issue of plaintiff's domicile; that the cause was *res adjudicata;* that the petitioner had accepted all of the benefits provided for her by the decree; and that she was estopped to now plead the lack of jurisdiction of the court which granted the decree. Appellant filed an amended petition in which she alleged that at the time she entered her appearance in the divorce suit, she did not know that plaintiff was a non-resident of Pulaski County. The trial court granted the motion to dismiss

the petition to set aside the decree, and petitioner has appealed.

The court's action in dismissing the petition to set aside the decree must be sustained for two reasons. In the first place, the issue of whether appellee was a *bona fide* resident of Pulaski County, Arkansas, at the time of the rendition of the decree is *res adjudicata*. Assuming now that Anderson was not a *bona fide* resident of Pulaski County at the time he was granted a divorce, the issue of his residence was before the court at that time and the burden was on him to prove such residence. Ark. Stat. § 34-1208.

We are not overlooking cases in which we have held that a divorce may be set aside where the plaintiff fraudulently claimed to be a *bona fide* resident, such as *Murphy* v. *Murphy*, 200 Ark. 458, 140 S. W. 2d 416; *Corney* v. *Corney*, 79 Ark. 289, 95 S. W. 135, 116 Am. St. Rep. 80; *Feldstein* v. *Feldstein*, 208 Ark. 928, 188 S. W. 2d 295; *Stewart* v. *Stewart*, 101 Ark. 86, 141 S. W. 193.

*Kennedy* v. *Kennedy*, 205 Ark. 650, 169 S. W. 2d 876, is another case relied on by appellant; but that case as well as *Parseghian* v. *Parseghian*, 206 Ark. 869, 178 S. W. 2d 49, was a direct appeal from the decree granting the divorce, and for that reason they are not in point with the situation presented here. Also in *Porter* v. *Porter*, 209 Ark. 371, 195 S. W. 2d 53, there was a direct appeal from the decree but the first decree had been set aside on a showing that the wife had been prevented by unavoidable casualty from making a defense. In all the other cases cited above, for various reasons the defendant did not appear and was not represented by counsel of her choice. But here, not only was the defendant notified of the filing of the suit, but she actually filed a waiver she had personally signed, engaged an attorney to appear in her behalf, and was ably represented. The decree provides benefits to her of a sum in excess of $60,000.

Furthermore in the case at bar there is no evidence of collusion such as existed in *Oberstein* v. *Oberstein*,

217 Ark. 80, 228 S. W. 2d 615. Therefore that case is not in point with the issue presented here.

In *Williams, et al.* v. *North Carolina,* 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A. L. R. 1366, it was held that the State of North Carolina was not compelled to give full faith and credit to a decree of divorce rendered by a Nevada court, where a jury in a North Carolina court found as a matter of fact that the defendant, who was on trial in North Carolina for illegal cohabitation, had never been a resident of Nevada. The effect of this finding resulted in a holding that the courts of Nevada had no jurisdiction over the person of Williams to render a divorce decree. But in that case service in the Nevada court had been obtained by warning order and the spouse did not appear to defend. It was specifically stated in the Williams case that the defendant spouse had not appeared nor had she been served with process in Nevada.

Later, in *Sherrer* v. *Sherrer,* 334 U. S. 343, 92 L. Ed. 1429, 68 S. Ct. 1087, 1 A. L. R. 2d 1355, where the State of Massachusetts had failed to accord full faith and credit to a decree of divorce rendered by the State of Florida, the U. S. Supreme Court held the Florida divorce was valid and the doctrine of *res adjudicata* was applicable. The court quoted from *Stoll* v. *Gottlieb,* 305 U. S. 165, 59 S. Ct. 134, 83 L. Ed. 104, as follows: "Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined." The court further said: "She may not say that he was not entitled to sue for divorce in the state court, for she appeared there and by plea put in issue his allegation as to domicile."

In *Coe* v. *Coe,* 334 U. S. 378, 92 L. Ed. 1451, 68 S. Ct. 1094, 1 A. L. R. 2d 1376, the court said: "Thus, here,

as in the *Sherrer* case, the decree of divorce is one which was entered after proceedings in which there was participation by both plaintiff and defendant and in which both parties were given full opportunity to contest the jurisdictional issues. It is a decree not susceptible to collateral attack in the courts of the State in which it was rendered."

Likewise in the case at bar Mrs. Anderson entered her appearance and filed an answer putting in issue the question of residence of the plaintiff. She was represented by counsel of her choice and obtained a substantial amount of money in the suit. She had her day in court. No appeal was taken from the decree rendered. The cause is *res adjudicata.*

On the question of estoppel, Mrs. Anderson accepted more than $60,000 under the provisions of the decree. She considered the decree valid insofar as it provided benefits for herself; and therefore she is not now in a position to say that although she did not appeal from the finding that Mr. Anderson was a resident of the county and state, and although she accepted the benefits awarded to her by the decree, she would now have the decree declared null and void. In pursuance to the provisions of the decree, Mr. Anderson paid to Mrs. Anderson the large sum of money mentioned. In *Baker-Matthews Lumber Co.* v. *Bank of Lepanto,* 170 Ark. 1146, 282 S. W. 995, it is said: "The whole principle of equitable estoppel is that when a man has deliberately done an act or said a thing, and another person who had a right to do so has relied on that act or words and shaped his conduct accordingly, and will be injured if the former can repudiate the act or recall the words, it shall not be done." Even if Mrs. Anderson had taken a direct appeal from the decree and had, pending the appeal, accepted the benefits of the decree, she would be estopped to continue the litigation. In *Jones, et al.* v. *Rogers, et al.,* 222 Ark. 523, 261 S. W. 2d 649, it is said: "We have a number of cases recognizing that when an appellant accepts a portion of a challenged order inconsistent with his appeal, he thereby waives his appeal. Some such cases

are *Bolen* v. *Cumby,* 53 Ark. 514, 14 S. W. 926; *Cranford* v. *Hodges,* 141 Ark. 587, 218 S. W. 185; *Wolford* v. *Warfield,* 170 Ark. 82, 278 S. W. 639; *Hutton* v. *Pease,* 190 Ark. 815, 81 S. W. 2d 21; *Baker* v. *Adams,* 198 Ark. 482, 129 S. W. 2d 597; *Morgan* v. *Morgan,* 171 Ark. 173, 283 S. W. 979.''

Our conclusion is that the cause is *res adjudicata;* and further, that the appellant, by the acceptance of the benefits of the decree, is estopped to say that the decree is invalid. The order of the Chancellor in dismissing the petition to set aside the decree is therefore affirmed.