JOHN S. COVINGTON, Judge.
Talmadge Dennis Bickham, Jr., hereafter referred to simply as “decedent,” died on February 11, 1982. His surviving widow, Marie McCauley Bickham (Marie) filed, on February 16, 1982, a petition to probate decedent’s statutory will and to be confirmed as testamentary executrix. The order probating the will and confirming her *912 as executrix was signed that day. Decedent’s only legal heirs, Talmadge D. Bick-ham, III, and Renee LaRue Bickham Priest, hereafter referred to simply as the “heirs,” filed “Petition for Declaratory Judgment and Other Relief” on June 23, 1983, alleging, inter alia, that: “[djecedent ... was married but once and then to Marie McCauley Bickham ” and they were issue of that marriage; certain bequests to Marie constituted an impingement on their legitime and should be reduced to the extent necessary to fully satisfy their legi-time; payment of succession expenses, including state and federal death taxes, out of the residuary estate as directed by decedent’s testament, combined with the testamentary provision that Marie’s legacies were to be free of all succession debts and taxes, also constituted an impingement on their legitime and the succession debts and taxes should be deducted from the decedent’s entire estate before determining the amount of Marie’s and the heirs’ legacies.
In their “amended, supplemental and restated petition for declaratory judgment and other relief,” filed on April 24, 1984, the heirs alleged, inter alia, that: decedent divorced Marie and on December 14, 1974 married Pamela Dianne Kellum and that marriage ended in divorce on January 7, 1977; decedent remarried Marie on March 16, 1977 and was married to her until his death; Marie has been duly qualified as testamentary executrix; Marie is not entitled to receive any “portion of the property ... under the legacy contained in Article 4.3 of the Will” except to the extent such property was “specifically bequeathed to [her] under Articles 4.1 and 4.2”; in the alternative, they are entitled to receive their legitime in full ownership, rather than subject to the testamentary usufruct granted Marie, and that Marie’s legacies “be commensurately reduced ... in order to satisfy said legitime in full”; and “the payment of all debts, funeral expenses, Federal Estate Taxes and State Inheritance and Estate Transfer Taxes, and all of the expenses of the administration of the estate out of their legacy is contrary to ... Article II of” decedent’s testament “and ... all such ... items should be deducted from and paid by the entire estate ... and allocated ratably among the respective portions of the estate to which the heirs and legatees are entitled, in proportion to their respective values.” The heirs alleged other factual circumstances they projected would impinge on their legitime.
Paragraphs 21, 22 and 23 of the amended petition for declaratory judgment challenge Marie’s having designated in the state and federal tax returns “certain assets of the decedent as belonging to the community between her and decedent ... when in fact ... such assets constitute part of the separate property of decedent,” ask for a declaration that such property was decedent’s separate property, and named Marie, “individually and as Testamentary Executrix” as the only party defendant “to assert such rights as she may have.”
Marie answered the heirs’ amended petition, admitting “her marriage and remarriage and dates thereof to decedent and that petitioners were the ... sole children of decedent” but denied the allegations concerning impingement on the legitime, payment of succession debts and administration expenses, and their characterization of most of decedent’s property as separate rather than community.
Marie filed the original detailed descriptive list of succession assets and liabilities on May 31, 1985, along with a petition alleging that specified acts of administration had been performed, certain items of property characterized as either separate or community property in both the federal and state tax returns were redesignated in the descriptive list, and that tax liability “will be affected by the changes.”. The portion of Marie’s petition which ultimately resulted in this appeal consists of Paragraphs 7 through 12 and paragraphs (2), (3) and (4) of her prayer.
Succinctly stated, Marie alleged the heirs informed her they “will attempt to find advantage in an unfortunate episode of marital discord between [Marie and decedent] which occurred during their marriage some years before his death to the end that the separate estate of decedent is en *913 larged.” Marie specifically alleged: (1) decedent “was a party to a purported divorce [suit against her in] Arkansas,” based on his assertion that he resided in Arkansas, which assertion “was erroneous because at no time did he ever depart from his residence and domicile of East Baton Rouge Parish and acquire a residence and domicile in any other state and particularly ... Arkansas,” and any assertion of residence or domicile in Arkansas “was made solely for the purpose of attempting to obtain a divorce”; (2) she and decedent were not legally divorced by the Arkansas divorce decree because the Arkansas court “did not have jurisdiction over the subject matter of their persons”; (3) the Arkansas decree is null and void “and did not create a hiatus in the marriage of [decedent and Marie] or give validity to the [Separation Agreement and Property Settlement and Renunciation of Community of Acquets and Gains, both of which were executed April 4, 1974, thus rendering those documents] null and void and of no force and effect [because they] were executed by the parties during marriage and do not fall in a category of transactions exempted from the then existing prohibition against married persons contracting with each other ... and, alternatively, the separation of property was never consummated through delivery ... of the consideration recited in said purported agreement”; (4) decedent’s “purported marriage to Pamela Kellum was without substance and void and the determined community of (sic) estate as shown in the sworn descriptive list was without considering that a divorce and third party marriage and remarriage had occurred”; and (5) she “participated in two other marriages to [decedent] ... on December 17, 1976 and .. ; on March 16, 1977, [which] marriages were consented to by [her] in order to give the decedent the assurance of a continuing marriage to [Marie] which he desired.”
Marie filed an amended descriptive list of assets and liabilities on June 13, 1985; that list differed from the original descriptive list in only one respect, namely the reduction of decedent’s total separate liabilities from $1,783,668.00 to $1,407,552.00, a net decrease of $376,116.00, which increased his total net separate estate from the originally stated $20,260,236.00 to $20,636,-352.00 and his total net estate from the originally stated $20,287,842.00 to $20,663,-958.00. The net value of decedent’s interest in the community property was stated to be $27,606.00 in both the original and amended detailed descriptive list after deducting $3,163,905.00, his one-half of liabilities characterized as community liabilities in the descriptive list.
On July 1, 1985, the heirs filed exceptions of (1) nonjoinder of necessary parties, (2) no cause of action, (3) no right of action, (4) res judicata, and (5) nonjoinder of indispensable parties.
A hearing was held on September 20, 1985 on the exceptions. A portion of the evidence was introduced and the matter was laid over to November 8, 1985 for the introduction of additional evidence. At the conclusion of the hearing on November 8, 1985, the trial court, for oral reasons assigned, dismissed all exceptions and declared the July 23, 1974 Arkansas divorce judgment, as well as the Separation Agreement and Property Settlement and the Renunciation of Community of Acquets and Gains, both dated April 4,1974 and incorporated into the July 23, 1974 judgment, null and void ab initio and cast the succession for costs.
The formal judgment was signed on November 14, 1985 and on December 3, 1985 the heirs devolutively appealed. On motion of the heirs, filed January 3, 1986, the trial court ordered, on January 6, 1986, that “those portions of the suit record and primary pleadings attached to this motion make up the official record on appeal” unless opposing counsel designated additional portions within ten days after service of the motion (together with the attached exhibit) and order. Within the ten days allowed by the order, appellee’s counsel objected to the designation of only portions of the record as the appeal record until such time as appellant complied with La.C.C.P. art. 2129 by serving with the designation a “concise statement of the points on which he intends to rely_” The heirs, appellants, promptly filed the required “State *914 ment of Points of Appeal” in assignments of error format.
ASSIGNMENTS OF ERROR
Appellants assign as errors the trial court’s overruling their exceptions pleading objections of (1) no cause of action, (2) no right of action, (3) nonjoinder of indispensable parties, (4) nonjoinder of necessary parties, and (5) res judicata (Assignments 1 through 5). They also assigned as errors the trial court’s failure to consider their contentions, including alternative contentions, concerning the validity of the “reso-lutory condition, [being] provision VI of the Separation Agreement and Property Settlement” and the Renunciation of Community of Acquets and Gains (Assignments 6 through 9).
RES JUDICATA/NO CAUSE OF ACTION/NO RIGHT OF ACTION
Appellants contend Marie’s suit, asking for a declaration of nullity of the July 23, 1974 Arkansas divorce and the Separation Agreement and Renunciation of Community incorporated in it, stated no cause of action because she acquiesced in the judgment, availed herself of the benefits of the Separation Agreement portion of the judgment, and remarried decedent twice after its rendition. Appellants also contend that Marie’s effort to have the Arkansas divorce judgment declared null and void is a prohibited collateral attack of a foreign judgment which has acquired the status of res judica-ta.
Arguing that Marie, “in her capacity as Executrix, is in effect attempting to assert her individual and personal claims and rights against decedent, his Succession, heirs and legatees, rather than asserting and defending the interests of” those persons and entity, appellants contend that Marie has no legal interest in the subject matter of her suit, assuming that the petition pleaded a valid cause of action, and their exception pleading no right of action should have been maintained.
Decedent filed a suit for divorce, styled “Complaint in Equity,” in the Chancery Court of Ashley County, Arkansas, on May 13, 1974, alleging, inter alia, that: he had resided in Ashley County for more than ninety days prior to the filing; he and Marie had “entered into a Separation Agreement and Property Settlement dated April 4,1974, which ... should be approved and incorporated into” the divorce decree. Also filed with the petition or complaint, but not alluded to in the petition, was an authentic act styled “Renunciation of Community of Acquets and Gains.” Decedent filed a pleading styled “Waiver, Entry of Appearance and Answer,” bearing the suit name and number, and Marie’s signature. The Louisiana notary’s acknowledgment on the “waiver” bears the date July 8, 1974 and in two places on the document the month “May” is struck through and the month “July” substituted in longhand.
In his introductory remarks to the court at the September 20, 1985 hearing, counsel for the heirs-appellants, stated, in part, that:
We have raised certain exceptions in this case. First, we have raised the exception of res judicata. We raised the exception of no cause of action, no right of action. Also we raised the issue that there has been nonjoinder of an indispensable party.... Those are the three objections that we raised.... I think that is our first issue, ... is the res judicata issue and no right, no cause of action concerning this particular case.
The trial court’s response was: “The court will refer the exception^] to the merits.” (Brackets supplied.) Marie’s counsel stated, preliminarily, that his client would like to offer evidence to support her contentions that the Arkansas divorce decree was a nullity and there was no legal hiatus in the marriage between her and the decedent. The judge overruled the heirs’ objection that the introduction of the evidence would be a collateral attack on a judgment of divorce which had acquired the status of res judicata.
Neither the oral reasons for judgment nor the formal judgment expressly mentioned or alluded to the five exceptions pleaded by the heirs. By implication, how *915 ever, it is clear that the trial court held Marie had both a cause of action and a right of action, and the res judicata effect which the heirs attributed to the Arkansas divorce decree was rejected, as were the pleas of nonjoinder.
We note that a judgment which dismisses peremptory exceptions of no cause of action, no right of action, res judicata, and nonjoinder of an indispensable party, is an interlocutory judgment. As such, it is not ordinarily appealable. La.C.C.P. art. 2083. The foregoing rule is subject to the exception that an interlocutory decree which will cause irreparable harm or injury is appealable. Parkerson v. Swaggart, 478 So.2d 922, 925 (La.App. 1st Cir.1985), citing Rapides Central Ry. Co. v. Missouri Pacific Ry. Co., 207 La. 870, 22 So.2d 200 (1945) and Yeager v. Baton Rouge General Hospital, 469 So.2d 47, 49 (La.App. 1st Cir.1985).
In the instant case, the trial judge referred the exceptions to the merits and conducted the hearing or trial on the merits accordingly.
The legal effect to be accorded the waiver document filed in the Arkansas divorce suit, and the evidence, both lay and expert, concerning the length of time, if any, that Mr. Bickham was a resident of Arkansas before the divorce suit was filed and before the judgment was granted, are factors we must consider in determining whether the trial court erred in expressly holding the Arkansas decree and its appendages null and void ab initio, the subject of the heirs’ exception pleading the objection of res judi-cata.
The “waiver, entry of appearance and answer” provides, in pertinent part, that Marie: (1) “enters her appearance for the purpose of giving the Court jurisdiction”-, (2) “waives notice of the taking, formalities in the taking, and forwarding of depositions in said cause”; (3) “admits the jurisdiction, marriage and separation”; and (4) the Separation Agreement dated April 4, 1974 should be incorporated into “any divorce decree handed down by this Court.”
Professor Dent Gitchel, an expert in domestic relations law who teaches family law, also called domestic relations law, at the University of Arkansas School of Law at Little Rock, was called by Marie to testify regarding the Arkansas divorce proceedings, both as to their effect in Arkansas and other states of the Union. Professor Gitchel testified, pertinently, as follows:
Arkansas ... has statutory requirements for service of process of defendants in lawsuits. Due process of law requires that defendants be served or at least if they are not served with process in accordance with the statute that the record reflect that there was a waiver of service. There is nothing in this document, Dennis Bickham No. 1, that indicates that there was either service of any sort either by mail or personally by a judicial officer, and there is nothing in this document that indicates that Mrs. Bickham waived service [of] process. That’s a fatal defect.
[[Image here]]
A judgment without either service or a waiver of service would be null and void under Arkansas law at least where there was not an actual appearance and a litigation of the fact of jurisdiction by the defendant [Marie] as apparently is the case ... based on what I heard Mrs. Bickham testify.
(Emphasis supplied.)
When asked whether the decedent’s July 23, 1974 Arkansas divorce decree would be “subject to attack in Arkansas” by Marie either in that divorce suit or in another proceeding, assuming, as testified by Marie, that decedent was never a resident of Arkansas, Professor Gitchel responded:
Certainly it would. Arkansas statutes impose a residence requirement [of 60 days] as a prerequisite to jurisdiction for granting a divorce. [Arkansas uses] residence rather than domicile as the statutory prerequisite. The statute specifically defines residence as actual presence in the state [and] ... our courts have held always that ... that 60 days presence is jurisdictional. The absence of 60 days actual presence in the state goes to the jurisdiction ... and if that *916 residence is not present then jurisdiction fails and the decree is void.
[[Image here]]
This decree under Arkansas law would be void. The decree could be challenged by petition by Mrs. Bickham in Arkansas. Therefore, the decree is subject to collateral attack in Louisiana. Under the Federal cases it is not entitled to full faith and credit in Louisiana. [TJhe Full Faith and Credit Clause does not require this court to give any more faith and credit to this decree than Arkansas would and Arkansas would hold this decree to be void ab initio.
(Emphasis supplied.)
Professor Robert R. Wright, III, Dona-ghey Distinguished Professor of Law at the University of Arkansas School of Law at Little Rock since 1977, called by appellants, was tendered as an expert in Arkansas law “particularly in the areas of property, equity, [and] Arkansas practice and procedure” and accepted by the trial court “as tendered.” Professor Wright testified, on direct, concerning decedent’s presence in Ashley County, Arkansas before the filing, during the pendency of the divorce suit, and the effect of Marie’s having signed the waiver document, in pertinent part, as follows:
Mrs. Bickham [by signing the waiver which was filed in the divorce suit] ... submitted to the jurisdiction of the Arkansas court. And in fact, entered her appearance and filed an answer. Consequently, the Arkansas court had jurisdiction at that point over Mrs. Bickham. The problem that arises in connection with that divorce is whether it [the Arkansas court] had jurisdiction over Mr. Bickham. Mr. Bickham, according to the facts submitted to me by Mr. Blazier [one of appellants’ attorneys of record] went to Ashley County ... [and] rented an apartment. I believe he had a checking account. And subsequently testified that he met the residence requirements of Arkansas lav/. However, as I understand it, he apparently did not spend very much time in Ashley County. He was there only for a matter of five or six days maybe in that entire period óf time..... [Apparently he did not meet the residence requirements of Arkansas, which requires bona fide residence. Arkansas requires that if somebody wants a divorce they can actually move to Arkansas. [H]e apparently didn’t do that. So that presents a jurisdictional problem.... However, once he obtained the Arkansas divorce that Mrs. Bickham had participated in by entering into a property settlement agreement and subsequently signing the pleading that she filed in the Arkansas court, she became estopped under Arkansas law to question the validity of the judgment. [T]he fact that she was not ignorant of what her husband’s true residency apparently was[,] is enough to preclude her from collateral attack.
(Emphasis supplied.)
Professor Wright emphatically stated that Marie “quite clearly” submitted to the jurisdiction of the Arkansas court because “she filed an answer and admitted jurisdiction [and] specifically entered her appearance” as shown by the document referred to in this opinion as the waiver document. On cross examination Professor Wright was asked whether he would “comment on whether Mr. Gitchel would be less than objective” and the witness stated “I am not going to comment on anything relevant to Mr. Gitchel other than he is qualified.” He candidly stated that “based on that statement of facts [furnished by Mr. Blazier] Mr. Bickham wasn’t a[n Arkansas] resident” and Marie “was never a resident, but she could consent for purposes of jurisdiction” over her person but not for the purpose of creating jurisdiction to render a divorce decree because “you still have the residency problem.” Relying on Arkansas jurisprudential principles, Professor Wright opined that Marie was estopped from attacking the divorce decree, either directly or collaterally, because of her “participation” in the divorce proceedings. He stated that Marie’s “participation” consisted of (1) “entering into the property settlement agreement in Louisiana, which was *917 subsequently ... incorporated in the [Arkansas] decree” and (2) “filing that waiver, entry of appearance and answer that was filed, in Arkansas.” He concluded from those actions that “the Arkansas cases hold that she participated in it and was estopped to challenge it.”
Marie, her children (appellants), and Pamela Mustin Slack, gave conflicting testimony concerning the longest period of time decedent was away from the family home during the months and years in question. Marie testified that her husband was never away from the home he shared with her for more than two or three consecutive days and when he was gone he was attending to business affairs of the family owned fanning and dairy operation.
The trial judge stated, in oral reasons for judgment, that: (1) based upon all the evidence, Mr. Bickham was not a resident of Arkansas, thus he did not fulfill the residency requirements for Arkansas to exercise jurisdiction over the subject matter of the divorce; (2) Marie did not make a personal appearance in the Arkansas proceedings, thus she could have the decree set aside; (3) the Arkansas judgment is void under Arkansas law, will be given no legal effect in Louisiana because it is not entitled to recognition under the Full Faith and Credit Clause; and (4) there was no legal interruption of the marriage between Tal-madge Dennis Bickham, Jr. and Marie McCauley Bickham within contemplation of Louisiana law.
Professor Wright relied, in part, on Smith v. Smith, 612 S.W.2d 736 (Ark. 1981), as support for his opinion that Marie was estopped from attacking the validity of the Arkansas divorce decree. In Smith, the defendant wife “wanted the divorce, paid half the expense, [and] planned to marry on its completion_"; she “admittedly received [a copy of the complaint] at the outset”; she “signed and verified that she had received a co-py of the complaint, waived service of summons and entered her appearance for all purposes.” 612 S.W.2d at 737. (Emphasis and brackets supplied.) Five days after the divorce decree was entered, plaintiff husband was killed in an industrial accident and about three weeks after his death Mrs. Smith filed a motion in the divorce proceedings to set aside the decree, “asserting that the decree was void for lack of jurisdiction, neither party [having been] a resident of Arkansas” and alleging that “the parties to the divorce were at all times domiciled in Louisiana, and that [plaintiff husband] had perpetrated a fraud on the court in claiming to be a resident of Arkansas.” 612 S.W.2d at 737. (Brackets supplied.) In affirming the chancellor's denial of the motion to vacate, the Supreme Court, per Hays, J., reasoned as follows:
Appellant finds herself in a dilemma from which she cannot escape: either [plaintiff husband] was a resident of Union County, Arkansas, as he claimed to be and as the chancellor found, and the decree of divorce is valid and, hence, res judicata. Anderson v. Anderson, 223 Ark. 571, 267 S.W.2d 316 (1954); or he was not a resident of Arkansas and perpetrated a fraud upon the court. If so, the appellant could not have been ignorant of that fraud and was a willing participant in it. In either event, she is precluded by the stigma of her own involvement from any relief against a decree obtained under these circumstances. See Leflar, American Conflicts Law, § 224 (1968).
612 S.W.2d at 737. (Emphasis and brackets supplied.)
Our independent research reveals that the Arkansas Legislature, by Act 36 of 1957, amended Ark.Stats.1947, § 34-1208, the statute governing residence in divorce cases. “The effect of the 1957 statute is to substitute residence, in the sense of physical presence, for domicile^] as a jurisdictional requirement in divorce cases.” Wheat v. Wheat, 229 Ark. 842, 318 S.W.2d 793, 794 (1958). Act 36 of 1957 provides that:
“The word ‘residence' as used in Section 34-1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent *918 and public policy of the State of Arkansas.”
The initial issue in Wheat was whether Act 36 of 1957 was constitutional. The chancellor held the legislation unconstitutional and dismissed appellant’s divorce suit based on his finding that Mr. Wheat had not proved he was domiciled in Arkansas. Reversing the holding of unconstitutionality, the divided court, per Justice George Rose Smith, reasoned in pertinent part as follows:
[T]he full faith and credit clause of the federal constitution, art. 4, § 1 is now construed to mean that a divorce decree is not entitled to recognition in other states unless one of the parties was domiciled in the state where the decree was rendered, Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, with an exception which precludes either party from attacking the decree if the question of domicile was actually put in issue. Sherer v. Sherer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355.
The full faith and credit clause deals only with the extent to which the decree is entitled to recognition elsewhere. It does not purport to say that the decree is not valid in the state where rendered; still less does it intimate that the courts cannot be authorized to act at all in the absence of proof of domicile.
[A] decree is not entitled to respect elsewhere merely because the statute exacts a showing of domicile as a condition to the maintenance of the suit, and this is true even though the court makes a finding that domicile does exist. The decree is still not conclusive of the issue, which may be re-examined in other jurisdictions. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. Although Nevada ostensibly requires proof of domicile, we have refused to recognize a Nevada decree when the court’s finding of domicile was clearly unsupported. Cooper v. Cooper, 225 Ark. 626, 284 S.W.2d 617. With or without Act 36 the acceptance of any particular Arkansas decree by a court in another state will ultimately depend upon whether that court believes that an Arkansas domicile really existed.
[[Image here]]
With respect to the due process clause, as distinguished from the full faith and credit clause, we are not convinced that domicile must be the sole basis for the exercise of jurisdiction over the marriage relationship.
[[Image here]]
... Domicile differs from residence only in the existence of a subjective intent to remain more or less permanently in the particular state.
By Act 36 the legislature has substituted the simple requirement of three months residence, which can be proved with certainty, for the nebulous concept of domicile, which usually cannot be proved.
318 S.W.2d at 795-797. (Emphasis and brackets supplied.)
Chief Justice Harris, in a concurring opinion in Wheat, stated, in part, that:
My personal feeling is that legislation should be directed to making divorces more difficult to obtain rather than easier to obtain, and I am unable to find much consolation in the fact that, after all, the Act in question has no effect upon our bona fide citizens, but only affects those who take up a temporary residence for the purpose of obtaining a divorce. It might be added, that in my view, any divorce granted under the provisions of this statute, in numerous of our sister states, will probably be worth only the paper it is written on.
... [WJhile I strongly disapprove of the legislation, ... I am of the opinion, for the reasons set forth in the majority opinion, that the Act is valid.
318 S.W.2d at 798. (Emphasis and brackets supplied.)
In Weaver v. Weaver, 231 Ark. 341, 329 S.W.2d 422 (1959), Justice McFaddin, one of two dissenters in Wheat, for a unanimous court, reversed the trial court’s sustaining *919 defendant husband’s demurrer to the evidence and remanded the matter for further proceedings. The issue presented in Weaver was “whether there was enough evidence on residence or domicile to require a final weighing” and the Court held there was. The Court reasoned, in part, that:
In Wheat v. Wheat, (citation omitted), this Court upheld Act No. 36 of 1957. So that now mere residence is sufficient for jurisdiction in divorce cases; but certainly domicile is still, and always has been sufficient. In Wheat v. Wheat the majority recognized that Arkansas divorces based on mere residence may not be entitled to full faith and credit in other States, whereas, divorces based on domicile are entitled to full faith and credit in other States. Thus, the majority opinion recognized that jurisdiction has all the time existed based on domicile.
In the case at bar, Mrs. Weaver certainly had a domicile somewhere.... Domicile includes the animus manendi; a person acquiring a domicile keeps such domicile until another one is acquired. Of domicile, the Supreme Court of the United States has said in Williams v. State of North Carolina, ... 65 S.Ct. 1092, ... “Domicile implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance.”
In ... Oakes v. Oakes, 219 Ark. 363, 242 S.W.2d 128: “To effect a change of domicile from one locality, state or country to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a home.... The change of residence must be voluntary; the residence at the place chosen for the domicile must be actual; and to the fact of residence there must be added the animus manendi."
329 S.W.2d at 423-424. (Emphasis, parentheses, and elipsis supplied.)
In Wheat the majority opinion stated that Mrs. Wheat contested the action for divorce and attacked the validity of Act 36 of 1957, and further observed:
We may lay aside at the outset any question about procedural due process. It is not suggested that Mrs. Wheat is being denied notice or an opportunity to be heard. To the contrary, she invokes the court’s jurisdiction by her request for separate maintenance.
318 S.W.2d at 796.
Defendant-appellant in Wheat actively litigated her husband’s suit for divorce.
In the instant case, Marie testified that she never received a copy of the divorce complaint, either before or after she signed the “waiver, entry of appearance and answer”; she did not file any pleadings in the Arkansas court but, instead, gave the signed “waiver” to Mr. Bickham who must have seen to it that the “waiver” document was filed; she never went to Arkansas and did not participate in the divorce suit; she never received any notice of trial or any other communication from an attorney ad litem, the Arkansas equivalent of Louisiana’s curator ad hoc, appointed by the court to communicate with an out of state defendant whose address is unknown to notify her of the pendency of the divorce action and of her right to contest the action. Based, in part, on Marie’s testimony, and the complaint, waiver, property agreement, and renunciation of community, introduced in globo as “Exhibit Dennis Bickham # 1,” Professor Gitchel testified that, under both Arkansas law and federal case law, Marie never subjected herself to the jurisdiction of the Arkansas court. He also opined that Mr. Bickham was never a resident of Arkansas, based, again, on Marie’s testimony concerning the duration of Mr. Bickham’s occasional absence from the home he shared with her. Professor Git-chel testified, pertinently, as follows:
[A]s I have heard the testimony in this case, Mrs. Bickham stayed here and the only thing she did that could arguably be considered to be submitting herself to the jurisdiction of the court was when *920 Mr. Bickham here in Louisiana brought to her that document that is entitled Waiver, Entry of Appearance and Answer and presented it to her and told her that he had a document she needed to sign; she not having been served with summons either by mail or by anybody having never (sic) seen a copy of the complaint which is a basic requirement both of state law and of due process; having never physically submitted herself to the jurisdiction of the court.... [I]f Mrs. Bickham made an appearance and participated in the Arkansas decree ... she may not later collaterally attack it in another state.... [I]n the Bickham case ... they knew where Mrs. Bickham was. She very easily could have been personally served with a summons. There is a procedure under Arkansas law and was at that time where an out of state defendant whose address is unknown can have an attorney ad litem ... attempt to communicate with that person. None of those things were done. The lawyer who handled this divorce knew that both of those procedures were available and required and did neither.
... The essential difference in my conclusion and Dr. Wright’s is whether or not estoppel and laches are a factual matter to be determined by this court in this proceeding, or whether as a matter of law Mrs. Bickham was long ago banned by Arkansas law from raising those matters and having them determined on the merits. At any rate that line of Supreme Court cases said if the defendant makes an appearance and participates then you can’t collaterally attack it in another state. They didn’t say what constitutes an appearance.... [T]he better rule is the rule which has been adopted by the courts of Louisiana ... [a]nd that is that where you have a nonresident defendant who has never physically submitted ... to the jurisdiction of the other court where the plaintiff doesn’t meet the jurisdictional prerequisite and where á piece of paper — typically called a waiver, entry of appearance and answer, or some similar thing — is presented to that person in the home state either by the plaintiff or by the plaintiff's emissary and then simply taken by the plaintiff or the plaintiff’s emissary to the forum state and filed ... and the defendant takes no further action other than just putting his or her signature on that piece of paper ... that is not significant to constitute an appearance for purposes of the Due Process Clause, for purposes of triggering the Full Faith and Faith Credit Clause to prevent a collateral attack in the other [home] state later. Of course, the leading case in Louisiana on that has been and is the Eaton case.
(Emphasis supplied.)
Professor Gitehel steadfastly adhered, under cross-examination, that the waiver document included in Dennis Bickham Exhibit # 1 was not a general appearance by Marie.
In the prelude to oral reasons for judgment, the trial judge stated, “I have the opportunity to grade the professors. That is something I always wanted to do.” Observing that both Professor Gitehel and Dr. Wright “submitted well-reasoned opinions in this case [and] the court has to adopt one of them,” the judge adopted Professor Git-chel’s opinion as the basis for his ruling.
The heirs’ “amended ..; and restated petition for declaratory judgment,” filed April 24, 1984, initially raised the issue of the “divorce” their father, the decedent, obtained. In her answer, Marie denied Mr. Bickham ever divorced her and denied her husband married and divorced Pamela Dianne Kellum. Her answer was filed “individually and as executrix.”
Marie’s petition was filed in her capacity as “duly qualified testamentary executrix” of the decedent’s succession. It alleged facts which, if accepted as true, would require the court to declare the Arkansas divorce decree of July 23, 1974 null and void because: (1) Mr. Bickham was never a resident of Arkansas and “[a]ny recitation of residence or domicile in Ashley county, Arkansas, was made solely for the purpose of attempting to obtain a divorce”; and (2) *921 the Chancery Court of Ashley County, Arkansas “did not have jurisdiction over the subject matter of their persons.” Consistent with her allegations, Marie prayed for judgment declaring that “the marriage [between Marie and decedent, contracted in May, 1958] was not terminated prior to his death,” the July 23, 1974 Arkansas divorce decree “was null and void,” and the Separation Agreement and Renunciation of Community, executed prior to the filing of the suit for divorce in Arkansas but incorporated in the Arkansas decree, were null and void.
The heirs-appellants’ fifth assignment of error, i.e., that the trial court erred in overruling their exception pleading the objection of res judicata, has no merit.
For the court to maintain the exception of no cause of action, it must determine that the well pleaded facts, accepted as true, does not grant a legal basis for the relief being sought by plaintiff. The exception raising the objection of no right of action addresses the question whether the particular plaintiff has a legal interest in the subject matter of the suit if the petition facially states a cause of action.
We hold, as the trial court did, that Marie’s petition for declaratory judgment states a valid cause of action and the heirs’ exception pleading otherwise was properly dismissed. We answer appellants’ argument that Marie, “in her capacity as Executrix, is in effect attempting to assert her individual and personal claims and rights against decedent, his Succession, heirs and legatees, rather than asserting and defending the interests of decedent, his Succession, heirs and legatees” by saying that even a testamentary executrix is not required to shoot herself in the foot by defending the integrity of a divorce decree which she sincerely believes to be a sham. Marshaling assets is but one duty of a testamentary executrix. Seeing to it that the provisions of the decedent's last will and testament are faithfully executed is another duty. Still another duty is providing the Court an accurate enumeration and characterization of the decedent’s property as either community or separate, or both, to the end that federal and state taxes are properly determined, calculated and paid. Another obvious reason for furnishing the Court with the proper classification or classifications of the decedent’s property is that the judgment of possession will correctly state the respective interests of the surviving spouse, heirs and legatees, and whether any legacy is subject to a usufruct for a fixed or indefinite duration.
Not infrequently there is some conflict between the testamentary executrix and legatees other than herself. There is certainly no shortage of conflicting claims between Marie and her children, not only in their capacities as legatees but also in Marie’s capacity as executrix and her children as legatees. We do not believe there must be a total absence of disharmony between a testamentary executrix and the legatees in order for the executrix to assert a claim which is hers individually. Filing a suit for declaration of the status of her marriage to the decedent is not such an impermissible conflict to warrant our concluding that Marie did not have a right of action to seek the declaratory judgment. We hold that Marie did have a right of action to have the court below declare the Arkansas divorce decree, and the two pre-filing documents executed in Louisiana and incorporated in the Arkansas decree, null and void ab initio, and that there was no legal interruption or hiatus in the marriage between Marie and the decedent within contemplation of Louisiana law.
The heirs-appellants’ first and second assignments of error, i.e., that the trial court erred in overruling their exceptions pleading the objections of no cause of action and no right of action, respectively, have no merit.
INDISPENSABLE PARTIES/NECESSARY PARTIES
We have previously held that Marie’s petition stated a cause of action and that she, individually, possessed a right of action, to challenge the Arkansas divorce decree. We observe that the appeal record *922 does not contain anything which indicates that the appellants-heirs ever attempted to have Marie removed as Testamentary Executrix on the ground that she had interests which would make her service as succession representative incompatible with her duties and the law. The first attack on her capacity was indirect and voiced through the exception of nonjoinder of indispensable party, which exception asserted that the succession representative should be defending, not attacking, the validity of the Arkansas divorce decree.
A succession representative is entitled to possession of immovable property belonging to the succession and to enforce that right of possession, even as against the forced heirs. Simpson v. Colvin, 138 So.2d 438 (La.App. 3d Cir.1962); La.C.C.P. art. 3211. ACCORD: Estate of Rice v. Deville, 240 So.2d 379 (La.App. 3d Cir. 1970). We hold that the exception of non-joinder of indispensable party was properly dismissed. Accordingly, appellants’ third assignment of error is without merit.
In their fourth assignment of error, appellants complain that' the trial court erred in dismissing its exception pleading nonjoinder of a necessary party which asserted that Pamela Mustin was that unnamed necessary party. We find no merit to this exception or assignment of error. Ms. Mustin testified that she and the decedent executed a community property settlement at some unspecified time. Any claim which she might have had against the succession was effectively disposed of in that settlement which, interestingly, was not introduced as an exhibit by appellants. The record as a whole, including Ms. Mustin’s testimony, supports the trial court’s dismissing the exception pleading nonjoinder of a necessary party.
For the above and foregoing reasons, the judgment of the trial court, declaring the July 23, 1974 judgment of the Chancery Court of Ashley County, Arkansas null and void ab initio and also declaring the Separation Agreement and Property Settlement of Renunciation of Community of Acquets and Gains, both dated April 4, 1974, null and void, is affirmed. The heirs-appellants are cast for all costs of these proceedings, both in this appeal and in the court below. La.C.C.P. art. 2164. To that extent only the judgment of the trial court ⅛ amended.
AMENDED AND AS AMENDED AFFIRMED.